```
 1  OFFICE OF THE MONTEREY COUNTY COUNSEL
    CHARLES J. MCKEE (SBN 152458), COUNTY COUNSEL
 2  LEROY W. BLANKENSHIP (SBN 065233), ASSISTANT COUNTY COUNSEL
    EFREN N. IGLESIA (SBN 71309), SENIOR DEPUTY COUNTY COUNSEL
 3  168 W. ALISAL, 3RD FLOOR
    SALINAS, CA  93901-2680
 4  Telephone:  (831) 755-5045
    Facsimile:  (831) 755-5283
 5  Email:  iglesiae@co.monterey.ca.us

 6  NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
    STEPHEN N. ROBERTS (SBN 062538)
 7  NICOLE A. TUTT (SBN 179244)
    CIARAN O'SULLIVAN (SBN 198970)
 8  50 CALIFORNIA STREET, 34TH FLOOR
    SAN FRANCISCO, CALIFORNIA 94111-4799
 9  Telephone: (415) 398-3600
    Facsimile: (415) 398-2438
10  Email: montereycase@nossaman.com

11  NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
    JOHN J. FLYNN III (SBN 076419)
12  18101 VON KARMAN AVENUE
    IRVINE, CA  92612-0177
13  Telephone: (949) 833-7800
    Facsimile: (949) 833-7878
14  Email: montereycase@nossaman.com

15  Attorneys for Defendants/Respondents
    BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY;
16  TONY ANCHUNDO, IN HIS CAPACITY AS MONTEREY COUNTY
    REGISTRAR OF VOTERS; AND THE COUNTY OF MONTEREY
17
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RANCHO SAN JUAN OPPOSITION COALITION; CITIZENS FOR RESPONSIBLE GROWTH; AND JULIE ENGELL,<br><br>Plaintiffs,<br><br>vs.<br><br>BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY; TONY ANCHUNDO, in his capacity as MONTEREY COUNTY REGISTRAR OF VOTERS; COUNTY OF MONTEREY; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No.:   C 06-2369 JW**<br><br>**DECLARATION OF ALANA KNASTER IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      To be submitted without hearing<br>Judge:    Hon. James Ware<br>Courtroom: 8 |

I, Alana Knaster, declare:

1. I am the Deputy Director of the Resource Management Agency of the County of Monterey (the "County"). Prior to that, I served as the Interim Director of Planning and Building Inspection for the County. I have personal knowledge of the following matters, and if called upon to testify as a witness, I could and would competently testify thereto.

2. In my various roles within the Planning and Building Inspection Department of the County and as the Project Planner, I have had primary responsibility for issues related to the development of the Butterfly Village project in the Rancho San Juan area by the H-Y-H Corporation ("HYH"), and have necessarily acquired knowledge of the litigation relating to that project since it first began.

3. The County of Monterey (the "County") and the Board of Supervisors (the "Board") have been involved for years in litigation with HYH, and, more recently, with citizen groups opposed to development in the Rancho San Juan area, such as Landwatch Monterey County ("Landwatch") and the Rancho San Juan Opposition Coalition ("RSJOC"). In the first such piece of litigation, HYH sued the County on, among other things, takings grounds. Attached hereto as Exhibit A is a true and correct copy of the Petition for Writ of Mandate and Complaint (without exhibits) filed by HYH against the County in Monterey Superior Court action no. M 46616 on November 10, 1999.

4. After a trial of HYH's original action, the Superior Court of Monterey ordered the County, on February 26, 2001, to complete processing of and adopt a Specific Plan for the Rancho San Juan Area of Development Concentration. Although the Court's Order did not specifically require the County to approve HYH's project, the County's adoption of zoning and plan amendments were necessary prerequisites to permitting HYH to develop the property it owned in that area. A copy of the Superior Court's Judgment is attached hereto as Exhibit B. A copy of the Superior Court's Statement of Decision dated March 1, 2001, is attached hereto as Exhibit C.

5. Pursuant to a stipulation with HYH reached after mediation, in order to avoid years of further litigation with HYH over its right to proceed with the Butterfly Village project, the County agreed not only to expeditiously process the plan and zoning changes to comply with the court's judgment, but also to concurrently process the Project. The County thereafter became a defendant in no

1  less than five additional lawsuits concerning the same development, including <u>two</u> actions currently
2  pending in Monterey County Superior Court alleging violations of the California Environmental Quality
3  Act ("CEQA") (Pub. Res. Code 2100, et seq.) by Landwatch and RSJOC.  Attached hereto as Exhibit D
4  is a true and correct copy of the Petition for Writ of Mandate and Complaint (without exhibits) filed in
5  the first of those actions, case no. M 72790, on January 14, 2005.   Attached hereto as Exhibit E is a true
6  and correct copy of the Petition for Writ of Mandate and Complaint (without exhibits) filed in the
7  second of those actions, case no. M 77363, on December 7, 2005.   HYH is the real party in interest in
8  both of those pieces of litigation.

      6.      On December 14, 2004 the County adopted certain amendments to the General Plan, adopted a Specific Plan for the Rancho San Juan area, and enacted a zoning ordinance, which would have placed it in compliance with the state court's order and judgment, and which provided for development on approximately 2,600 acres of the Rancho San Juan area.  Shortly thereafter Landwatch and RSJOC sponsored a referendum to defeat the amendments to the General Plan.

      7.      In light of that impending repeal, and in order to again try to place itself in compliance with the state court's order and to avoid a potentially huge damages claim against the County by HYH, the Board again attempted to amend the relevant general plan provisions, this time in a much more scaled-down manner.  On November 7, 2005, the Board passed Resolution No. 05-305 (the "Resolution") amending certain policies of the general and area plans relative to the Rancho San Juan area.  A true and correct copy of that Resolution is attached hereto as Exhibit F.  The Board also adopted a Revised Specific Plan by Resolution No. 05-321, which allowed for development only on approximately 671 acres of HYH's property and enabled the County to comply with the 2001 state court order and avoid further damages claims from HYH.  A true and correct copy of Resolution No. 05-321 is attached hereto as Exhibit G.  On November 8, 2005, the voters passed the referendum.  The Passage of that referendum thereby repealed the original plan amendments effected by the County to place it in compliance with the state court's order.

      8.      Shortly thereafter, RSJOC sponsored the referendum at issue in this case (the "Referendum") to repeal the November 7, 2005 Resolution, and this Referendum qualified for the June 2006 ballot.  It was ordered placed on that ballot by the Board on January 24, 2006. The Board later

**DECLARATION OF ALANA KNASTER IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

removed the Referendum from that ballot on March 28, 2006.  I am informed and thereon believe that among the reasons the Board removed the Referendum from the ballot include this Court's ruling on the Initiative Matter, and the fact that Sabas Rangel and Maria Buell had sued the County for violating the Federal Voting Rights Act in placing the Referendum on the ballot without it having been circulated in Spanish.

9. Passage of a referendum repealing the Resolution, and hence the changes to the general and area plans, will possibly again place the County in violation of the state court order mandating the adoption of a Specific Plan that will permit the development in the Rancho San Juan area, and possibly in contempt of court.  Accordingly, on March 13, 2006, the County moved in the state court action, in the form of a Motion for Judgment on the Pleadings, for declaratory relief as to whether the Referendum, if it passes, will take precedence over the state court order, or whether the state court order is the higher authority and the Referendum must yield to it.  A true and correct copy of the County's Memorandum of Points and Authorities in support of that motion is attached hereto as Exhibit H.  After the Board removed the Referendum from the June ballot the County and HYH stipulated to stay that proceeding, resolution of that issue no longer being immediately necessary.  Attached hereto as Exhibit I is a true and correct copy of a letter from the County's attorney in that matter, Catherine Engberg, Esq., informing the Court of that stipulation.

10. From my experience in working in the Planning and Building Inspection Department of the County I know that the typical manner in which groups opposed to a particular project act to prevent the developer from starting a project is by means of a request for injunctive relief in the action in which they have sought a Writ of Mandate.  Landwatch and RSJOC, as noted above, have sought Writs of Mandate to prevent the Butterfly Village project on CEQA grounds in the California state court, but to date they have not filed any request for an injunction.  In my experience I have observed that if there is any doubt about the legality of a project, including doubts based on federal grounds, such an injunction is usually granted by state courts, in an abundance of caution.

11. Because of the numerous delays in amending zoning and other ordinances necessary to authorize the HYH project,[1] and the uncertainty surrounding the legality of the Resolution and the Referendum, HYH has yet to commence compliance with a total of two hundred and sixty-three (263) conditions of approval imposed by the Board, (over one hundred (100) of which conditions must be complied with before the subdivision map is recorded and grading permits are issued) and has yet to commence obtaining a myriad of permits and approvals from many other agencies that will be necessary before it will be allowed to "turn dirt" on the Rancho San Juan project.  A true and correct copy of the Board of Supervisor's Mitigation Monitoring Plan for the Butterfly Village project, which sets forth the two hundred and sixty-three (263) conditions imposed by the Board on HYH, is attached hereto as Exhibit J.  Given the time-periods normally required to satisfy those conditions and to process and obtain those permits and approvals, it is almost impossible, even if the Referendum were passed by voters this coming November and HYH immediately commenced work on meeting the above-referenced conditions, that HYH could commence any work to develop the Butterfly Village project in less than one or one and one-half years.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: July 10, 2006

By: _____/s/_____
            ALANA KNASTER

---

[1] Those delays were described in the state court's March, 2001, Statement of Decision as amounting at that time to over 14 years, and which by 2006 now amount to over 20 years.

1 **ATTESTATION**  I, Stephen N. Roberts, am the ECF User whose identification and password are being used to file this document.  In compliance with General Order 45.X.B, I hereby attest that Alana Knaster has concurred in this filing.

                                          /S/  
                                      Stephen N. Roberts

**DECLARATION OF ALANA KNASTER IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**