# Exhibit B

1  Laurence P. Horan, Esq. #26524
   Mark A. Blum, Esq. #124316
2  Elizabeth C. Gianola, Esq. #142522
   HORAN, LLOYD LAW OFFICES
3  499 Van Buren St., P.O. Box 3350
   Monterey, CA  93942-3350
4  Telephone: (831) 373-4131

5  Frederik Jacobsen, Esq. #71330
   P. O. Box 6190
6  San Mateo, California 94403
   Telephone: (650) 375-8991

7

8  Attorneys for Petitioner/Plaintiff

9

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                IN AND FOR THE COUNTY OF MONTEREY

12

13  H-Y-H CORPORATION, a                )    Case No.  M 46616
    Delaware corporation,               )
14                                      )
                 Petitioner and         )    JUDGMENT GRANTING
15            Plaintiff,                 )    PEREMPTORY WRIT OF
                                        )    MANDATE
16  vs.                                 )
                                        )
17  COUNTY OF MONTEREY and              )
    DOES I through XX, INCLUSIVE,       )
18                                      )
                 Respondents and        )
19            Defendants.                )
    _____/  )

20

21        This matter came regularly before this Court on July 26, 2000, for hearing. Both parties were

22  present through their respective attorneys. The record of the proceedings having been received into

23  evidence and examined by the court, and additional evidence having been received by the court,

24  arguments having been presented, and the court having made a statement of decision, which has been

25  signed and filed,

26        IT IS ORDERED that:

27        1.    A peremptory writ of mandate shall issue from the Court commanding respondent

28

    JUDGMENT GRANTING PEREMPTORY                 HYH CORPORATION v. COUNTY OF MONTEREY
    WRIT OF MANDATE                              CASE NO. M-46616

FILED

FEB 27 2001

SHERRI L. PEDERSEN
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

1  to continue to process the EIR, Specific Plan and zoning for the Rancho San Juan Area of

2  Development Concentration forthwith, consistent with statutory requirements for public notice, and

3  to diligently complete the certification of said EIR, the adoption of said Specific Plan, and zoning

4  for the ADC within a reasonable time period in accordance with the law. Nothing in this writ shall

5  limit or control the discretion legally vested in respondent, shall compel any particular result, nor

6  prevent respondent from specifically finding that the General Plan is inadequate and/or taking

7  appropriate action under Government Code Section 65858.

8      3.    The Court has not made an award of attorneys' fees or costs in this proceeding, but

9  will consider that upon submission of an appropriate motion or cost bill.

10

11  DATED: ___2-26-01___        **RICHARD M. SILVER**
                                Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit C**

1   Laurence P. Horan, Esq. #26524
    Mark A. Blum, Esq. #124316
2   Elizabeth C. Gianola, Esq. #142522
    HORAN, LLOYD LAW OFFICES
3   499 Van Buren St., P.O. Box 3350
    Monterey, CA  93942-3350
4   Telephone: (831) 373-4131

5   Frederik Jacobsen, Esq. #71330
    P. O. Box 6190
6   San Mateo, California 94403
    Telephone: (650) 375-8991

7

8   Attorneys for Petitioner/Plaintiff

9

**FILED**

**MAR 0 1 2001**

SHERRI L. PEDERSEN
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

10                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      IN AND FOR THE COUNTY OF MONTEREY

12

13   H-Y-H CORPORATION, a              )        Case No.  M 46616
     Delaware corporation,             )
14                                     )
              Petitioner and           )        STATEMENT OF DECISION
15        Plaintiff,                   )
                                       )
16   vs.                               )
                                       )
17   COUNTY OF MONTEREY and            )
     DOES I through XX, INCLUSIVE,     )
18                                     )
              Respondents and          )
19        Defendants.                  )
     _____/     )

20

21       The above-entitled cause came on regularly for trial on July 26, 2000 in the above entitled-

22   court, The Honorable Richard M. Silver, Judge, presiding without a jury and was tried on that date.

23   Both parties were present through their respective attorneys.

24       By stipulation this matter was bifurcated and the trial herein was conducted only as to the

25   first through fourth causes of action for writs of mandate, and the fifth, sixth, and thirteenth causes

26   of action for declaratory relief and estoppel.

27       Oral and documentary evidence was introduced on behalf of the respective parties and the

28
     STATEMENT OF DECISION                              HYH CORPORATION v. COUNTY OF MONTEREY
                                                        CASE NO. M-46616

1   cause was argued and submitted for decision. The Court, having considered the evidence and heard

2   the arguments of counsel and being fully advised, makes the following statement of decision in

3   support of a Peremptory Writ of Mandamus compelling COUNTY to continue to process the EIR

4   and Specific Plan for the Rancho San Juan Area of Development Concentration forthwith, consistent

5   with statutory requirements for public notice and to diligently complete the certification of the EIR

6   and adoption of the Specific Plan within a reasonable time period in accordance with the law.

7   1.      A principal controverted issue at trial was whether respondent could postpone further

8   processing of the EIR and Specific Plan for the Rancho San Juan Area of Development

9   Concentration until after an update of the General Plan. The Court has determined that respondent

10  must continue to process the Rancho San Juan EIR and Specific Plan forthwith, consistent with

11  statutory requirements for public notice and must diligently complete the certification of the EIR and

12  adoption of the Specific Plan within a reasonable time period in accordance with the law.

13          a.      The Court based its decision on the following facts:

14  Petitioners are the owners of land in the Rancho San Juan area of North Monterey COUNTY.

15  In 1982 COUNTY adopted the Monterey COUNTY General Plan. This plan designated the Rancho

16  San Juan area as an "Area of Development Concentration" (ADC) study area and deferred planning

17  in that area to the Greater Salinas Area Plan (GSAP). During the preparation of the GSAP

18  alternative ADC areas were considered. An EIR was prepared for the GSAP. The EIR was certified

19  and GSAP adopted by the COUNTY in 1986. The Rancho San Juan area was designated as an ADC

20  and the GSAP provided <u>that no discretionary development could take place until a specific plan for</u>

21  <u>this area was adopted.</u> In summary, the General Plan deferred the planning of this area to the GSAP;

22  the GSAP deferred it to a Specific Plan; and discretionary development was thereby precluded until

23  adoption of the Specific Plan.

24          Shortly after adoption of the GSAP Petitioners were advised that COUNTY lacked funds to

25  prepare the Specific Plan <u>and</u> that current COUNTY policy then prohibited permitting Petitioners

26  to fund or prepare the Plan themselves. In January 1987 COUNTY did prepare and circulate

27  Requests for Proposals (RFP) for the Plan and sought funds from the State for a "Feasibility Study,"

28

1  an initial step in the Plan process. In 1989, with little progress in preparation of the Plan, Petitioners

2  submitted various documents as part of an application for development called North Monterey

3  Heights, which included a request for General Plan amendment to eliminate the requirement for a

4  Specific Plan for this limited development. In 1990 COUNTY decided to defer this application until

5  the Specific Plan was completed and adopted a Resolution designating certain lands as "Areas of

6  Benefit" to impose predevelopment fees to recover costs for the "Feasibility Study." In addition they

7  also approved an agreement for preparation of the "Feasibility Study."

8       The "Feasibility Study" was completed and accepted by COUNTY in September 1991. It

9  made recommendations including reductions in density below the GSAP and reduced water

10  consumption. In September 1992 COUNTY adopted an Ordinance amending the zoning in the

11  GSAP to conform to the General Plan. Rancho San Juan, including Petitioners' property, was zoned

12  light industrial and high density residential.

13       Third parties who alleged that it violated CEQA challenged the zoning ordinance. In order

14  to settle that lawsuit, COUNTY asked Petitioners to pay COUNTY lawyer fees and agree to a

15  rescission of the ordinance as it applied to the ADC, pending timely completion of the Specific Plan

16  consistent with the "Feasibility Study" and its reduced density and other recommendations.

17  Petitioners agreed. In 1993, as part of their discussions, COUNTY also changed their policy and

18  adopted appropriate ordinances to allow private parties to reimburse costs of environmental studies

19  and plan processing.

20       Finally, in 1994, COUNTY adopted the agreement for preparation and processing of the EIR

21  and Specific Plan. At the same time COUNTY contracted with "The Planning Center" to act as

22  consultants to prepare the EIR and Plan. The agreement established a schedule for completion and

23  adoption of the EIR and Plan that provided for completion of public hearings by December 1994.

24  Further, Petitioners agreed to accept the reduced densities suggested in the Feasibility Study.

25       Contemplated within the above agreements reached with Petitioners for both the payments

26  of money and the reduction in density was that COUNTY would proceed to complete the EIR and

27  Specific Plan in a timely manner. In this connection, the "Agreement for Preparation, Processing,

28

1   and Reimbursement for Specific Plan and Environmental Impact Report" COUNTY specifically

2   agreed to "prepare and process a legally sufficient Specific Plan and EIR for the ADC as promptly

3   as possible."

4        Since this time Petitioners have paid over $500,000.00 pursuant to the ordinance and

5   agreement. A portion of these funds went to the COUNTY.

6        Neither the EIR nor Plan was completed by the scheduled date in 1994. It was not until

7   December 1998 that a Draft Plan and EIR were finally circulated for public review. The comment

8   period closed in March 1999 with over 400 comments. Shortly thereafter COUNTY informed

9   Petitioners that it was intending to commence a General Plan update and recommended postponing

10   further processing of the Specific Plan and EIR until that was completed. Petitioners did not agree.

11   In May 1999 the Chief of Planning Services recommended suspension of the processing of the Plan

12   and EIR until the General Plan update was completed. Petitioners again objected. Notwithstanding

13   Petitioners' position, COUNTY has not proceeded with the processing of the Specific Plan and EIR.

14   The purported time for completion of the General Plan Update is indefinite and could take multiple

15   years.

16        b.    The legal basis for the Court's decision is as follows:

17        Contrary to the argument of COUNTY, Petitioners do not seek any adjudication as to the

18   contents or substance of the Plan or the EIR nor to compel COUNTY to "legislate" in a particular

19   manner. Nor do they claim any vested right to development. They only seek that COUNTY

20   complete the processing, certification, and adoption of both the EIR and the Plan. This is important

21   in that COUNTY has specifically precluded any discretionary development until the adoption of the

22   Specific Plan. Nothing herein shall compel any particular result nor prevent COUNTY from

23   specifically finding that the General Plan is inadequate and/or taking appropriate action under

24   Government Code section 65858.

25        The general plan is the "constitution" or "charter" for all land use within a COUNTY. City

26   of Sausalito v. County of Marin 12 Cal.App.3d 550 (1970). The preparation of a General Plan is

27   mandatory. Government Code Section 65300. No development may proceed unless and until there

28

STATEMENT OF DECISION

1   is a legally adequate General Plan and all other Plans and development must be consistent with the

2   General Plan.  It is appropriate in the General Plan itself to specifically require and defer to the

3   preparation of Specific Plans for specialized or discreet areas.  In this context Government Code

4   Section 65450 provides that:

5

6   "After the legislative body has adopted a General Plan, the planning may, or **if so directed** the legislative body, **shall**, prepare specific plans for the systematic implementation of the general plan for all or part of the area covered by the

7   general plan."

8   Therefore, when the legislative body defers a specific area for preparation of a specific plan,

9   precludes all development until that is prepared, and directs the preparation of that plan, the adoption

10   of that specific plan becomes a part of the legislative bodies' mandatory duty to prepare a legally

11   adequate general plan. In the instant case the General Plan did defer to the preparation of the Greater

12   Salinas Area Plan, which, in turn, deferred to the development of a specific plan for the area in

13   question. As a consequence COUNTY has mandatory duty to adopt a specific plan.

14       No statute or appellate case establishes a date certain by which the adoption of a Plan or

15   certification of an EIR must be completed.  Obviously the times for completion of these tasks will

16   vary according to the particular circumstances and nature of the project. This issue presented herein

17   is whether COUNTY's action in suspending processing and adoption of the Specific Plan and EIR

18   for an indefinite time while they consider whether the General Plan will be updated, given the

19   specific factual context of this case, is arbitrary, capricious, lacking in evidentiary support, or

20   contrary to procedures required by law.

21       COUNTY in part argues that the Court is without jurisdiction to compel completion of the

22   Plan and EIR because the "timing" is in itself a legislative act. If this were the case COUNTY could,

23   at will, indefinitely delay the adoption of a mandatory plan without consequence and a landowner

24   could be precluded from bringing a "takings" action because no final decision on the permissible

25   scope of development had been reached.  Although there is authority that a public entity may be

26   liable for a "temporary takings" where they delay a project beyond the "normal and/or reasonable

27   time to accomplish processing," it could well be argued that no such takings could or should take

28

APR-22-2002   09:26        MO    ).  COUNSEL                              )        831  771  0595      P.02/02

1   place until Petitioners take some action to compel action.  Where there is a mandatory duty to act

2   and COUNTY has failed to so act, the Court does have jurisdiction to determine whether that

3   decision is an abuse of discretion.

4        The delay here is not "short term." It has been over 14 years. Only a very small part of that

5   delay was attributable to Petitioners. COUNTY's excuse has generally been lack of money and/or

6   staff. Although these factors may certainly be considered, they do not end the inquiry where there

7   is a mandatory duty to act. No other plan or project has been delayed for this extended period of

8   time. Further, for a substantial period of time Petitioners have been funding the process pursuant

9   to the agreement with COUNTY. The lack of funds or staff does not justify the present action by

10  COUNTY and the extraordinary length of time already passed must be considered in determining

11  the legitimacy of further delays.  This length of time becomes even more critical where all

12  development is precluded until the action is completed, no definite time for completion of the

13  General Plan update is contemplated, and the projected time period is in the range of multiple of

14  years not months.

15        Another important factor is that COUNTY specifically contractually obligated itself to

16  complete the Plan and EIR by a date certain and extracted money from Petitioners in exchange

17  therefore.

18        Finally, COUNTY asserts that it is permissible to extend the delay to update the General

19  Plan. Although the update of a General Plan is an important and at times necessary action the issue

20  here is whether it legally justifies suspension of the preparation of this Specific Plan given the

21  findings above. There is no evidence that the completion of this Plan or EIR will substantially

22  interfere with the General Plan update process. This action does not seek to compel any particular

23  substantive finding or requirement within the EIR or Plan. In fact, should the EIR identify specific

24  environmental issues they will be required to be addressed in the EIR and considered in the Plan.

25  Although COUNTY's supplemental brief "infers" that the General Plan may be "outdated" there has

26  been no specific finding of such. If the General Plan is inadequate then all development must be

27  precluded. The COUNTY has not refused to process any other project because the General Plan was

28

STATEMENT OF DECISION                                      HYH CORPORATION v. COUNTY OF MONTEREY
                                                           CASE NO. M-46616
                               - 6 -

1    "outdated" nor have they taken any action pursuant to Government Code Section 65858.

2         Given the specific factual content of this case the Court finds that the decision of COUNTY

3    to suspend further processing of the Plan and EIR for an indefinite period is contrary to law.

4    (Government Code Sections 65103(b), 65300, and 65450; Public Resources Code Sections

5    21082.2(d) and 21091(d).)

6    2.    A principal controverted issue at trial was whether COUNTY was compelled to adopt

7    zoning for Petitioner's property within a reasonable time. The Court has determined that COUNTY

8    shall adopt zoning for Petitioner's property forthwith, consistent with statutory requirements for

9    public notice, completing said process within a reasonable time period in accordance with the law.

10   (Government Code §65860.)

11        a.    The Court based its decision on the following facts:

12        In September 1992 COUNTY adopted an Ordinance amending the zoning in the GSAP to

13   conform to the General Plan. Rancho San Juan, including Petitioners' property, was zoned light

14   industrial and high-density residential.

15        Third parties who alleged that the rezoning violated CEQA challenged the zoning ordinance.

16   In order to settle that lawsuit, COUNTY asked Petitioner to pay COUNTY lawyer fees, agree to a

17   rescission of the Ordinance as it applied to the ADC, pending timely completion of the Specific Plan

18   consistent with the "Feasibility Study" and its reduced density and other recommendations.

19   Petitioners agreed. In 1993, as part of their discussions, COUNTY also changed their policy and

20   adopted appropriate ordinances to allow private parties to reimburse costs of environmental studies

21   and plan processing.

22   3.    The Court has found the issue of declaratory relief concerning COUNTY's duty to prepare,

23   process and adopt the Specific Plan, certify the EIR, and adopt a zoning ordinance within the ADC

24   moot based on the facts and legal reasons stated herein above.

25   4.    A principal controverted issue at trial was whether COUNTY was estopped from denying

26   that Petitioners have a right to have COUNTY expeditiously complete the preparation, processing,

27   and adoption of a legally adequate Specific Plan and EIR. The Court has determined this issue is

28

STATEMENT OF DECISION

HYH CORPORATION v. COUNTY OF MONTEREY
CASE NO. M-46616

1    moot based on the facts and legal reasons stated hereinabove.

2    5.    For the reasons articulated by Petitioner, the Court finds that Petitioner is not barred from

3    proceeding herein for failure to exhaust administrative remedies.

4    6.    The Court has found that Ordinance No. 04037 was validly enacted.

5        a.    The Court based its decision on the reasons articulated by COUNTY,

6    specifically including COUNTY's determination that Ordinance No. 04037 is consistent with the

7    General Plan, the Greater Salinas Area Plan (including Policy 26.1.4.1) and the Growth Management

8    Policy, and does not obstruct their attainment.

9    7.    Judgment should be entered:

10       a.    Ordering a peremptory writ of mandamus to issue from this Court, directing

11   Respondent to continue to process the EIR, Specific Plan and zoning for the Rancho San Juan Area

12   of Development Concentration forthwith, consistent with statutory requirements for public notice;

13   and to diligently complete the certification of said EIR, and the adoption of said Specific Plan and

14   zoning within a reasonable time period in accordance with the law; and

15       b.    The Court has not made an award of attorneys' fees or costs in this proceeding,

16   but will consider that upon submission of an appropriate motion or cost bill.

17       Let judgment be entered accordingly.

18

19   DATED: 3-1-01                                                        Judge

20                    RICHARD M. SILVER

21

22

23

24

25

26

27

28

STATEMENT OF DECISION

# COPY

1  Laurence P. Horan, Esq. #26524
   Mark A. Blum, Esq. #124316
2  Elizabeth C. Gianola, Esq. #142522
   HORAN, LLOYD LAW OFFICES
3  499 Van Buren St., P.O. Box 3350
   Monterey, CA  93942-3358
4  Telephone: (831) 373-4131

5  Frederik Jacobsen, Esq. #71330
   P. O. Box 6190
6  San Mateo, California 94403
   Telephone: (650) 375-8991

7

8  Attorneys for Petitioner/Plaintiff

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10             IN AND FOR THE COUNTY OF MONTEREY

11

12  H-Y-H CORPORATION, a            )   Case No. M 46616
    Delaware corporation,           )
13                                  )
                                    )   PEREMPTORY WRIT OF
14          Petitioner and          )   MANDATE
        Plaintiff,                  )
15                                  )
    vs.                             )
16                                  )
    COUNTY OF MONTEREY and          )
17  DOES I through XX, INCLUSIVE,   )
                                    )
18          Respondents and         )
    Defendants.                     )
19  _____)

20

21  TO: COUNTY OF MONTEREY, Respondent:

22          Judgment having been entered in this action, ordering that a peremptory writ of mandate be

23  issued from this Court,

24          YOU ARE HEREBY COMMANDED immediately on receipt of this writ to continue to

25  process the EIR and Specific Plan for the Rancho San Juan Area of Development Concentration

26  forthwith, consistent with statutory requirements for public notice, and to diligently complete the

27  certification of said EIR, the adoption of said Specific Plan and zoning for the ADC within a

PEREMPTORY WRIT OF MANDATE

FEE $ 23.00
MOI-
RECEIPT NO. 3036

1   reasonable time period in accordance with the law. Nothing in this writ shall limit or control the

2   discretion legally vested in you, shall compel any particular result, nor prevent you from specifically

3   finding that the General Plan is inadequate and/or taking appropriate action under Government Code

4   Section 65858.

5

6         YOU ARE FURTHER COMMANDED to make and file a return to this writ on or before

7   May 3, 2001, setting forth what you have done to comply.

8

9   DATED: **FEB 2 6 2001**        **SHERRI L. PEDERSEN**, Clerk

10                    By _____, Deputy Clerk

11  LET THE FOREGOING WRIT ISSUE    L. BROWN

12  DATED: 2-26-01 _____ Judge

13

14                      RICHARD M. SILVER

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit D**



1  Mark R. Wolfe, CSB No. 176753
    John H. Farrow, CSB No. 209221
2  M. R. WOLFE & ASSOCIATES
3  140 Second Street, Sixth Floor
    San Francisco, CA 94105
4  Tel: (415) 369-9400
5  Fax: (415) 369-9405

6  Attorneys for Plaintiffs and Petitioners

**FILED**

JAN 1 4 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

7

8             THE SUPERIOR COURT OF CALIFORNIA

9                COUNTY OF MONTEREY

10             MONTEREY COURTHOUSE

11

12  LANDWATCH MONTEREY COUNTY, a
     non-profit California Corporation, and
13  RANCHO SAN JUAN OPPOSITION
     COALITION, an unincorporated association;
14

15         Plaintiffs and Petitioners,

16     vs.

17  COUNTY OF MONTEREY;

18        Defendant and Respondent

19  _____

20  H-Y-H CORPORATION, a Delaware
     Corporation; and DOES I through XXV,
21  inclusive;

22        Defendants and Real Parties
23        In Interest

Case No.: **M72970**

**PETITION FOR WRIT OF MANDATE;
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF; COMPLAINT
FOR VALIDATION**

(Code Civ. Proc. §§ 1085, 1094.5, 863;
California Environmental Quality Act, Pub.
Res. Code § 21000 *et seq.*; State Planning and
Zoning Law, Gov't Code § 65000 *et seq.*;
Monterey County Code.)

24

25

26

27

28

PETITION & COMPLAINT

 

## INTRODUCTION

1.      This Petition and Complaint challenges the December 14, 2004 actions of Respondent COUNTY OF MONTEREY ("County") approving general plan and area plan amendments, a specific plan, zoning changes, amendments to the County subdivision ordinance, a vesting tentative subdivision map, a development agreement, a development permit and other use permits, and certifying an Environmental Impact Report ("EIR") pursuant to the California Environmental Quality Act ("CEQA"), Public Resources Code section 21000 *et seq.*, for the Rancho San Juan Specific Plan/Butterfly Village Project ("Project"), a 2,581-acre mixed-use residential, commercial, industrial, and recreational project to be developed by real party in interest H-Y-H CORPORATION ("H-Y-H"). Petitioners and plaintiffs LANDWATCH MONTEREY COUNTY  and RANCHO SAN JUAN OPPOSITION COALITION (collectively "Petitioners") allege that the County approved the Project in violation of applicable provisions of: (1) CEQA; (2) the State Planning and Zoning Law, Government Code section 65000 *et seq.*; and (3) applicable provisions of the Monterey County Code.  Petitioners also allege that the County improperly entered into a development agreement and granted other entitlements to H-Y-H after H-Y-H's corporate powers, rights, and privileges had been suspended by the Secretary of State, and it was unauthorized to transact business in California.

2.      Petitioners seek a peremptory writ of mandate under Code of Civil Procedure section 1094.5 commanding the County to set aside its certification of the Environmental Impact Report and its corresponding permits and/or approvals for the Project.  Petitioners also seek a writ of mandate under Code of Civil Procedure section 1085 commanding the County to bring its General Plan and zoning ordinance into compliance with the requirements of the Planning and Zoning Law within 120 days, and to set aside the Project-related General Plan amendment, zoning changes, subdivision ordinance amendments, development agreement, and specific plan.  Petitioners also seek a preliminary and permanent injunction barring the County and H-Y-H from undertaking any activity that could potentially alter the physical environment unless and until the County has taken all actions necessary to bring its actions into conformance with CEQA, the State Planning and Zoning Law, and the Monterey County Code.  Petitioners further seek an order declaring the development agreement invalid, and other entitlements null and void, due to H-Y-H Corporation's forfeiture of its corporate powers, rights, and

 

1   privileges.  Finally, Petitioners seek a stay of the effect of the County's approval of the Project during

2   the pendency of these proceedings.

3                                                **PARTIES**

4                                    **LandWatch Monterey County**

5        3.    Petitioner LANDWATCH MONTEREY COUNTY ("LandWatch") is a California non-profit

6   public benefit corporation exempt from federal income taxation under Section 501(c)(3) of the U.S.

7   Internal Revenue Code.  Its principal place of business is Salinas, California.  LandWatch's

8   organizational purpose is to promote sound land use planning and legislation at the city, county, and

9   regional levels, to combat urban sprawl, and to promote livability in the region's cities and towns,

10   through public policy development, advocacy, and education.  LandWatch is dedicated to preserving

11   economic vitality, high agricultural productivity, and environmental health in Monterey County by

12   encouraging effective public participation in the land use planning process.

13       4.    LandWatch's members, directors, and staff include residents, taxpayers, and electors in

14   Monterey County who currently enjoy the multitude of aesthetic, recreational, and health benefits

15   stemming from the current undeveloped state of the Project area.  These include: clean air, preserved

16   natural resources, agricultural productivity, unobstructed views of the natural landscape, hiking trails,

17   and traffic levels significantly less than those they will experience if the Project proceeds.

18       5.    LandWatch's members, directors, and staff have a clear and present right to, and beneficial

19   interest in, the County's performance of its duties to comply with CEQA, the State Planning and Zoning

20   Law, and the Monterey County Code.  As citizens, homeowners, taxpayers, and electors, LandWatch's

21   members, directors, and staff are within the class of persons to whom the County owes such duties.

22       6.    LandWatch's members, directors, and staff will also suffer direct injury as a result of the

23   Project's adverse environmental, public health, aesthetic, and land use impacts.  These include: the

24   permanent loss of vast quantities of currently undeveloped open space and agricultural lands, blighting

25   of the area's landscape, air pollution associated with increased vehicle traffic from construction and

26   operation of the Project, permanent loss of habitat for plant and animal species including species

27   protected under state and federal law, loss of recreational opportunities, increased traffic congestion in

28

 

1    the area, impacts to local water supply and water quality from poorly planned and inefficient land

2    development, and an overall decrease in quality of life.

3        7.    By this action, LandWatch seeks to protect the interests of its members, directors, and staff,

4    and to enforce a public duty owed to them by the County.  Because the claims asserted and the relief

5    sought in this petition are broad-based and of a public as opposed to a purely private or pecuniary

6    nature, direct participation in this litigation by LandWatch's individual members is not necessary.

7        8.    LandWatch presented oral and written comments in opposition to the Project, including

8    comments on the Draft EIR, to the County prior to and during the public hearings culminating in the

9    County's December 14, 2004 approvals.

10   **Rancho San Juan Opposition Coalition**

11       9.    Petitioner RANCHO SAN JUAN OPPOSITION COALITION ("the Coalition") is an

12   unincorporated association of citizens, residents, property owners, and taxpayers in Monterey County.

13   The Coalition's members currently enjoy the multitude of aesthetic, recreational, and health benefits

14   stemming from the current undeveloped state of the Project area.  These include: clean air, preserved

15   natural resources, agricultural productivity, unobstructed views of the natural landscape, hiking trails,

16   and traffic levels significantly less than those they will experience if the Project proceeds.

17       10.    The Coalition's members have a clear and present right to, and beneficial interest in, the

18   County's performance of its duties to comply with CEQA, the State Planning and Zoning Law, and the

19   Monterey County Code.  As citizens, homeowners, taxpayers, and electors, the Coalition's members are

20   within the class of persons to whom the County owes such duties.

21       11.    The Coalition's members will also suffer direct injury as a result of the Project's adverse

22   environmental, public health, aesthetic, and land use impacts.  These include: the permanent loss of vast

23   quantities of currently undeveloped open space and agricultural lands, blighting of the area's landscape,

24   air pollution associated with increased vehicle traffic from construction and operation of the Project,

25   permanent loss of habitat for plant and animal species including species protected under state and

26   federal law, loss of recreational opportunities, increased traffic congestion in the area, impacts to local

27   water supply and water quality from poorly planned and inefficient land development, and an overall

28   decrease in quality of life.

 

12.    By this action, the Coalition seeks to protect the interests of its members and to enforce a public duty owed to them by the County.  Because the claims asserted and the relief sought in this petition are broad-based and of a public as opposed to a purely private or pecuniary nature, direct participation in this litigation by the Coalition's individual members is not necessary.

13.    The Coalition presented oral and written comments in opposition to the Project, including comments on the Draft EIR, to the County prior to and during the public hearings culminating in the County's December 14, 2004 approvals.

### County of Monterey

14.    Defendant COUNTY OF MONTEREY ("County") is a political subdivision of the State of California.  On December 14, 2004, the County, through its Board of Supervisors, approved general plan and area plan amendments, a specific plan, zoning changes, subdivision ordinance changes, a vesting tentative subdivision map, a development agreement, a development permit and other use permits, and certified an EIR under CEQA for the Project.  The County is the "Lead Agency" responsible under CEQA for evaluating the environmental impacts of this Project.  The County is also the entity responsible under the State Planning and Zoning Law and the Monterey County Code for evaluating and approving the Project with respect to its compliance with all applicable local planning, zoning, and land use ordinances.

### H-Y-H Corporation

15.    Real Party In Interest H-Y-H CORPORATION ("H-Y-H") is a Delaware Corporation maintaining a California address at 655 Redwood Highway, Suite 332, Mill Valley.  H-Y-H is the applicant for and recipient of the land use entitlements and permits issued by the County for the Project on December 14, 2004, and challenged herein.

16.    The Secretary of State has certified that H-Y-H's corporate powers, rights and privileges were forfeited in the state of California pursuant to Revenue and Taxation Code section 23302 as of March 1, 2004, and remain forfeited as of January 11, 2005.

### Does




17.    Petitioners currently do not know the true names of DOES I through XXV inclusive, and therefore name them by such fictitious names.  Petitioners will seek leave from the court to amend this petition to reflect the true names and capacities of DOES I through XXV inclusive once ascertained.

**JURISDICTION AND VENUE**

18.    This action is brought pursuant to Public Resources Code sections 21167 and 21168, Government Code sections 65751 and 65860, and Code of Civil Procedure sections 1085,1094.5, and 863.  Venue is proper in the County of Monterey under Code of Civil Procedure section 395.

**PROCEDURAL HISTORY AND AGENCY ACTION**

19.    The Project area consists of 2,581 acres and is located in northern portion of Monterey County in a region known as the Greater Salinas Area.  It is located just north of and adjacent to the City of Salinas within a general area bounded by the historic Bolsa de Escarpines Rancho boundary to the north, Crazy Horse Canyon Road and San Juan Grade Road to the east, Russell Road to the south, and Highway 101 to the west.

20.    Land uses in the Project area are governed by the goals, policies, and objectives of the Monterey County General Plan and the Greater Salinas Area Plan.  The land use, traffic and circulation, conservation, safety, and noise elements of the General Plan were last updated in 1982.  The housing and open space elements were last updated in 1992.  The Greater Salinas Area Plan was adopted in 1985, and last updated in 1996.

21.    On or about September 27, 2002, H-Y-H applied to the County for various land use entitlements to develop the Project.  The application sought amendments to the Monterey County General Plan and the Greater Salinas Area Plan, changes to the Monterey County Zoning Ordinance and Subdivision Ordinance, and approvals of a specific plan, development permit, development agreement, vesting tentative map, and various other approvals.  The County deemed the application complete on February 3, 2003.

22.    The Project includes: 4,000 residential units, 373,000 square feet of retail/community space, 2.4 million square feet of light industrial/business park use, 243,000 square feet of office development, an 18-hole golf course and clubhouse, a small hotel, parks, and open space.  It is the largest single development ever proposed in Monterey County.

 

23.   On or about July 21, 2003, the County released a draft Rancho San Juan Specific Plan. The County later revised the Specific Plan on or about March 15, 2004.

24.   On or about May 18, 2004, the County filed a Notice of Availability and circulated a Draft EIR for the Project. The public review period was from May 19, 2004 to July 12, 2004.

25.   Several interested agencies, private individuals, and organizations, including Petitioners, provided written comments on the Draft EIR during the public comment period. State and local agencies with jurisdiction over resources impacted by the Project also submitted comments.

26.   In their comments, Petitioners and others challenged the scope and adequacy of the Draft EIR's analysis of Project-related environmental impacts, its conclusions regarding the significance of such impacts; and its recommendations for mitigating them. Petitioners and others also challenged the Project's consistency with the General Plan and applicable regional plans.

27.   On or about November 8, 2004, the County released a Final EIR for the Project.

28.   On December 2, 2004, the County's Planning Commission held a public hearing on the Project. Following the hearing, the Planning Commission adopted a resolution recommending that the County Board of Supervisors: (a) not certify the Final EIR for the Project; (b) not adopt the proposed general plan and area plan amendments; (c) not adopt the proposed Rancho San Juan Specific Plan; (d) not approve the proposed zoning changes; (e) deny the development permit; and (f) not approve the proposed Development Agreement between H-Y-H and the County.

29.   On December 14, 2004, the County Board of Supervisors conducted a hearing on the Project, at which Petitioners and others presented oral comments opposing the Project. Following the hearing, the Board voted to reject the Planning Commission's recommendations, and to adopt resolutions and ordinances approving entitlements and permits for the Project, and certifying the Final EIR.

30.   Included in the County's recitals approving the General Plan and Area Plan amendments were findings that the amendments were compatible and internally consistent with the County General Plan and the Greater Salinas Area Plan.

31.   Included in the County's recitals approving the Rancho San Juan Specific Plan were findings that the Specific Plan was consistent with the County General Plan and Greater Salinas Area Plan, and would implement the goals and objectives of those plans in the Project area.

 

32.     Included in the County's findings approving the Butterfly Village development permit were findings that the Project was consistent with the proposed Rancho San Juan Specific Plan, the Monterey County General Plan, as proposed to be amended, and the Greater Salinas Area Plan, as proposed to be amended.  Also included were findings that the Project was in compliance with all rules and regulations pertaining to zoning uses, subdivisions and any other applicable provisions of Title 21 of the Monterey County Code (Zoning), as proposed to be amended.

33.     Included in the County's findings certifying the EIR for the Project were findings that: (a) the EIR evaluated all potentially significant environmental impacts that could result from the approval of the Project, alternatives to the Project, and measures designed to mitigate or avoid the potentially significant impacts of the Project; (b) the Project would cause certain significant environmental impacts that were either less-than-significant, or that would be reduced to a less-than-significant level as a result of implementing feasible mitigation measures; (c) the Project would cause certain other significant adverse environmental impacts that are unavoidable even after mitigation, and that no additional feasible mitigation measures are available to reduce these impacts to less-than-significant levels; and (d) that alternatives to the Project or the Project location that would reduce or avoid potentially significant impacts, including a "No Project" alternative, as evaluated in the EIR, were infeasible or "less desirable" due to economic, social, or other considerations.

34.     The Board's findings also included a finding that no facts, reasonable assumptions predicated on facts, testimony supported by adequate factual foundation, or expert opinion supported by facts, had been submitted that refute the conclusions reached by the studies, data, reports and analysis contained in the Final EIR.

35.     In adopting a statement of overriding considerations pursuant to Section 21080 of the Public Resources Code, the Board found that economic, legal, social, technological, or other benefits of the Specific Plan and HYH Project outweighed their unavoidable adverse environmental effects so that the adverse environmental effects may be considered "acceptable."

36.     The Board's findings certifying the EIR also included a finding that recirculation of a revised Draft EIR was not required because "amplifications and clarifications made to the Draft EIR in the Final EIR do not collectively or individually constitute significant new information within the meaning of



1    Public Resources Code Section 21092.1 and CEQA Guidelines Section 15088.5, and because the Final

2    EIR does not contain significant new information, as defined in CEQA Guidelines Section 15088.5,

3    which would require re-circulation of the modified sections or entire document."

4        37.    On December 16, 2004 the County filed and posted a "Notice of Determination" in

5    compliance with Public Resources Code section 21152.

6        38.    On January 13, 2005, Petitioners served the County by mail with notice of commencement of

7    this action.

8                           **FIRST CLAIM FOR RELIEF**

9                              **(Violation of CEQA)**

10       39.    Petitioners here incorporate by reference the preceding paragraphs in their entirety.

11       40.    At all times relevant to this action the County was the "Lead Agency" responsible for the

12   review and approval of the Project under Public Resources Code section 21067.

13       41.    A Lead Agency may not approve a development project without performing the

14   environmental review required by CEQA.

15       42.    Under CEQA, the County was required to prepare an EIR that included an accurate, stable,

16   and finite project description, and a detailed statement setting forth all of the following: (a) all

17   significant effects on the environment of the proposed project; (b) any significant effect on the

18   environment that cannot be avoided if the project is implemented; (c) any significant effect on the

19   environment that would be irreversible if the project is implemented; (d) mitigation measures proposed

20   to minimize significant effects on the environment; (e) alternatives to the proposed project, including

21   alternative locations; (f) the growth-inducing impact of the proposed project.

22       43.    Under Public Resources Code section 21110, the EIR was also required to contain a

23   statement briefly indicating the reasons for determining that various effects on the environment of the

24   Project were not significant and consequently were not discussed in detail in the EIR.

25       44.    Under Public Resources Code section 21100(b)(2)(A), when preparing an environmental

26   impact report a Lead Agency must identify all significant effects on the environment caused by a

27   proposed project that cannot be avoided.

28




45.     Under Public Resources Code section 21100(b)(3), when preparing an environmental impact report a Lead Agency must identify mitigation measures to minimize significant impacts on the environment.  A lead agency may not improperly defer the formulation of mitigation measures until a future time.

46.     Under Public Resources Code section 21081(a), a Lead Agency may not approve a project for which an EIR identifies a significant environmental impact unless the impact has been mitigated or avoided by changes in the project or unless the agency specifically finds that overriding benefits outweigh the significant effects on the environment.

### Count One – Inadequate Project Description

47.     Petitioners here incorporate by reference the preceding paragraphs in their entirety.

48.     Under CEQA, an EIR must include a finite, stable, accurate and meaningful project description.  (14 C.C.R. § 15124.)

49.     The EIR for this Project fails to include a complete, accurate, stable, finite, and meaningful description of the Project as required by CEQA.  The EIR's project description omits key project features that have the potential to cause significant impacts, including meaningful descriptions of the landscape alternation and grading that will be required to construct the Project; the proposed uses of the Project; the layout and nature of the Project's improvements, lots, buildings, and infrastructure; and the construction activities required to build the Project.

50.     The County therefore prejudicially abused its discretion in certifying the EIR, by failing to proceed in the manner required by CEQA, and by adopting findings that are not supported by the evidence.

### Count Two – Inadequate Description Of Environmental Setting

51.     Petitioners here incorporate by reference the preceding paragraphs in their entirety.

52.     Under CEQA, an EIR must include a description of the physical environmental conditions in the vicinity of the project as they existed at the time the notice of preparation is published, with particular focus on the regional setting.  (14 C.C.R. § 15125.)

53.     An EIR must also discuss any inconsistencies between the proposed project and applicable general plans and regional plans.  (14 C.C.R. § 15125(c).)




54.   The EIR fails to include an accurate description of the Project's physical and environmental setting, and fails to identify or discuss numerous inconsistencies between the Project and the Monterey General Plan, the Greater Salinas Area Plan, and applicable regional plans, including the Monterey County Water Resources Agency Ordinance No. 3539, the Monterey County Groundwater Ordinance No. 4037, the Monterey Bay Unified Air Pollution Control District's 2004 Air Quality Management Plan, the Central Coast Regional Water Quality Control Board's Water Quality Management Plan, the Boronda Memorandum of Understanding, the City of Salinas General Plan, and the 2002 Monterey County Regional Transportation Plan.

55.   The County therefore prejudicially abused its discretion in certifying the EIR, by failing to proceed in the manner required by CEQA, and by adopting findings that are not supported by the evidence.

**Count Two - Failure To Evaluate Adequately All Significant Project Impacts**

56.   Petitioners here incorporate by reference the preceding paragraphs in their entirety.

57.   Under CEQA, an EIR must identify and evaluate the direct, indirect, and cumulative environmental impacts of all phases of a project. (14 C.C.R. § 15126.)  The discussion must include relevant specifics of the area, the resources involved, physical changes, alterations to ecological systems, and changes induced in population distribution, population concentration, the human use of the land (including commercial and residential development), health and safety problems caused by the physical changes, and other aspects of the resource base such as water, historical resources, scenic quality, and public services. (14 C.C.R. § 15126.2)

58.   The EIR for this Project fails to evaluate all the Project's significant direct, indirect, and cumulative impacts, including impacts on: aesthetics, agricultural resources, air quality, biological resources, cultural resources, geology and soils, hazards and hazardous materials, hydrology and water quality, land use and planning, mineral resources, noise, population and housing, public services, recreation, transportation and traffic, and utilities.

59.   The County therefore prejudicially abused its discretion in certifying the EIR, by failing to proceed in the manner required by CEQA, and by adopting findings that are not supported by the evidence.

PETITION & COMPLAINT                                    10

 

### Count Three – Failure To Evaluate Adequately All Feasible Mitigation Measures

60. Petitioners here incorporate by reference the preceding paragraphs in their entirety.

61. An EIR must describe and evaluate feasible measures for minimizing or avoiding a project's direct, indirect, and cumulative impacts on the environment. (14 C.C.R. § 15126.4.)

62. The EIR for this Project fails to describe and evaluate all reasonable, feasible mitigation measures for the Project's direct, indirect, and cumulative impacts, including impacts on aesthetics, agricultural resources, air quality, biological resources, cultural resources, geology and soils, hazards and hazardous materials, hydrology and water quality, land use and planning, mineral resources, noise, population and housing, public services, recreation, transportation and traffic, and utilities.

63. The County therefore prejudicially abused its discretion in certifying the EIR, by failing to proceed in the manner required by CEQA, and by adopting findings that are not supported by the evidence.

### Count Four – Improper Deferral Of Mitigation

64. Petitioners here incorporate by reference the preceding paragraphs in their entirety.

65. The EIR improperly defers to a future date evaluation of mitigation measures for Project impacts, including those on aesthetics, agricultural resources, air quality, biological resources, cultural resources, geology and soils, hazards and hazardous materials, hydrology and water quality, land use and planning, mineral resources, noise, population and housing, public services, recreation, transportation and traffic, and utilities.

66. The County therefore prejudicially abused its discretion in certifying the EIR, by failing to proceed in the manner required by CEQA, and by adopting findings that are not supported by the evidence.

### Count Five - Inadequate Analysis of Project Alternatives

67. Petitioners here incorporate by reference the preceding paragraphs in their entirety.

68. An EIR must describe a range of reasonable alternatives to the project, or to the location of the project, which would feasibly attain most of the basic objectives of the project but would avoid or substantially lessen any of the significant effects of the project, and evaluate the comparative merits of

 

1   the alternatives. (14 C.C.R. § 15126.6.) An EIR must include sufficient information about each

2   alternative to allow meaningful evaluation, analysis, and comparison with the proposed project. (*Id.*)

3       69.   The EIR fails to identify and evaluate a reasonable range of alternatives to the Project,

4   including alternative site designs, layouts, facilities placements, and configurations that would avoid or

5   minimize significant impacts.

6       70.   The County therefore prejudicially abused its discretion in certifying the EIR, by failing to

7   proceed in the manner required by CEQA, and by adopting findings that are not supported by the

8   evidence.

9               **Count Six – Unsupported Statement Of Overriding Considerations**

10      71.   Petitioners here incorporate by reference the preceding paragraphs in their entirety.

11      72.   Under Public Resources Code section 21081(b), an agency may not approve a project with

12   significant unavoidable impacts unless it finds, based on substantial evidence, that specific overriding

13   economic, legal, social, technological, or other benefits of the project outweigh the significant effects on

14   the environment.

15      73.   The EIR identifies several impacts as unavoidably significant, but the County found these

16   impacts acceptable due to overriding economic, legal, social, technological, and other benefits of the

17   Project.

18      74.   There is no substantial evidence in the record to support this finding. There is substantial

19   evidence in the record that disproves this finding.

20      75.   The County therefore prejudicially abused its discretion in certifying the EIR, by failing to

21   proceed in the manner required by CEQA, and by adopting findings that are not supported by the

22   evidence.

23             **Count Seven – Failure To Recirculate Revised Draft EIR**

24      76.   Petitioners here incorporate by reference the preceding paragraphs in their entirety.

25      77.   Under Public Resources Code section 21092.1, a lead agency must recirculate an EIR when

26   significant new information is added to the EIR following public review, but before certification. New

27   information is significant if the EIR is changed in a way that deprives the public of a meaningful

28   opportunity to comment upon a substantial adverse environmental effect of the Project.

 

78.     In certifying the Final EIR, the County adopted findings that recirculation of the EIR was not required because "amplifications and clarifications" made to the Draft EIR in the Final EIR do not constitute new information within the meaning of Public Resources Code section 21092.1.

79.     The Final EIR certified by the County contains significant new information within the meaning of Public Resources Code section 21092.1 that deprives the public of a meaningful opportunity to comment upon a substantial adverse environmental effect of the Project.

80.     The County therefore prejudicially abused its discretion in certifying the Final EIR, by failing to proceed in the manner required by CEQA, and by adopting findings that are not supported by the evidence.

## SECOND CLAIM FOR RELIEF

### (Violation of State Planning and Zoning Law)

81.     Petitioners here incorporate by reference the preceding paragraphs in their entirety.

82.     Under the Planning and Zoning Law, Government Code section 65000 *et seq.*, a local public agency may entitle a proposed land use only if the land use is consistent with the goals, policies, and objectives contained in a valid, current, internally consistent General Plan, and with all applicable duly adopted zoning ordinances.

83.     Government Code section 65300.5 requires that a general plan and elements and parts thereof comprise an integrated, internally consistent and compatible statement of policies for the adopting agency.

84.     Government Code section 65302(b) provides that the circulation element of a general plan shall be correlated with the land use element.

85.     Government Code section 65103(a) requires a local planning agency, including the County, to periodically review, and revise, as necessary, its general plan.

86.     Government Code section 65751 provides that a writ of mandate under Code of Civil Procedure section 1085 may be obtained to challenge a general plan or element thereof on the grounds that such a plan or element does not comply with the requirements for general plans set forth at Government Code section 65300 *et seq.*

PETITION & COMPLAINT                           13

 

87.   Government Code section 65754 requires that where a court finds that a general plan or element thereof does not comply with requirements for general plans set forth at Government Code section 65300 *et seq.*, the County shall bring its general plan into compliance within 120 days.

88.   Government Code section 65755 provides that the court may also order relief including suspension of authority to issue permits, to grant zoning changes, and to grant subdivision map approvals.

89.   Code of Civil Procedure section 1094.5 provides that a court shall issue a writ of administrative mandamus where a public agency, in a proceeding in which by law a hearing is required to be given, has committed a prejudicial abuse of discretion.  Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

## Count Eight – Invalid General Plan

90.   Petitioners here incorporate by reference the preceding paragraphs in their entirety.

91.   The Monterey County General Plan is incomplete, internally inconsistent, out-of-date, and fails to comply with all applicable statutory criteria under the State Planning and Zoning Law.

92.   The Monterey County General Plan therefore fails to comply with the requirements for general plans set forth at Government Code section 65300, *et seq.*

## Count Nine – Project Not Consistent With Valid, Current General Plan

93.   Petitioners here incorporate by reference the preceding paragraphs in their entirety.

94.   At the time of the County's approvals of the Project and related General Plan and Area Plan amendments challenged herein, the Monterey County General Plan was incomplete, internally inconsistent, out-of-date, and failed to comply with all applicable statutory criteria under the Planning and Zoning Law.

95.   The Project is therefore not consistent with a valid, current, internally consistent General Plan.

96.   The Project further directly implicates the inadequacies of the General Plan.

97.   The County's action approving the Project was therefore arbitrary and capricious and/or constituted a prejudicial abuse of discretion, in that the County failed to proceed in the manner required

 

1  by the State Planning and Zoning Law, and adopted findings of General Plan consistency that are not

2  supported by the evidence.

3  **Count Ten – Amendments Render General Plan Inadequate And Internally Inconsistent**

4  98.  Petitioners here incorporate by reference the preceding paragraphs in their entirety.

5  99.  The Planning and Zoning law requires General Plans to be internally consistent and that the

6  circulation element be correlated with the land use element.

7  100.  At the time of the County's approvals of the Project and related General Plan and Area Plan

8  amendments challenged herein, the Monterey County General Plan was incomplete, internally

9  inconsistent, out-of-date, and failed to comply with all applicable statutory criteria under the Planning

10  and Zoning Law.

11  101.  In approving the Project, the County amended the County General Plan.

12  102.  As a direct result of these amendments, the County General Plan's circulation element is not

13  correlated with its land use element, and the General Plan is otherwise inadequate and internally

14  inconsistent.

15  103.  The amendments to the General Plan further directly implicate the pre-existing inadequacies

16  of the County General Plan.

17  104.  The County's action in adopting General Plan amendments was therefore arbitrary and

18  capricious and/or constituted a prejudicial abuse of discretion, in that the County failed to proceed in the

19  manner required by the Planning and Zoning Law and adopted findings of General Plan consistency that

20  are not supported by the evidence.

21  **Count Eleven – Area Plan Amendments Render General Plan Inadequate And Internally**
22  **Inconsistent**

22  105.  Petitioners here incorporate by reference the preceding paragraphs in their entirety.

23  106.  The Planning and Zoning law requires General Plans to be internally consistent and that the

24  circulation element be correlated with the land use element.

25  107.  In approving the Project, the County amended the Greater Salinas Area Plan, which is part of

26  the County General Plan.

27  108.  At the time of the County's approvals of the Project and related General Plan and Area Plan

28  amendments challenged herein, the Monterey County General Plan was incomplete, internally




1   inconsistent, out-of-date, and failed to comply with all applicable statutory criteria under the Planning

2   and Zoning Law.

3       109.   The amendments to the Greater Salinas Area Plans are inconsistent with the goals, policies,

4   and implementation plans in the County General Plan, including those concerning land use,

5   transportation, open space, conservation, and safety.

6       110.   The amendments to the Greater Salinas Area Plan further directly implicate the inadequacies

7   of the County General Plan.

8       111.   As a direct result of the amendments to the Greater Salinas Area Plan, the County General

9   Plan's circulation element is not correlated with its land use element, and the General Plan is otherwise

10  inadequate and internally inconsistent.

11      112.   The County's action amending the Greater Salinas Area Plan was therefore arbitrary and

12  capricious and/or constituted a prejudicial abuse of discretion, in that the County failed to proceed in the

13  manner required by the Planning and Zoning Law and adopted findings of General Plan consistency that

14  are not supported by the evidence.

15          **Count Twelve – Zone Changes Not Consistent With Adequate General Plan**

16      113.   Petitioners here incorporate by reference the preceding paragraphs in their entirety.

17      114.   The Planning and Zoning Law requires that zoning ordinances be consistent with a valid,

18  current, internally consistent General Plan.

19      115.   At the time of the County's approvals of the Project and related General Plan and Area Plan

20  amendments challenged herein, the Monterey County General Plan was incomplete, internally

21  inconsistent, out-of-date, and failed to comply with all applicable statutory criteria under the Planning

22  and Zoning Law.

23      116.   In approving the Project, the County adopted changes to the Monterey County zoning

24  ordinances that implement land use changes specified in the unlawfully adopted General Plan

25  amendments.

26      117.   These zoning changes are inconsistent with the goals, policies, and implementation plans in

27  the County General Plan, including those concerning land use, transportation, open space, conservation,

28  and safety.

 

118. The zoning changes further directly implicate the inadequacies of the County General Plan.

119. The County's action in adopting these zoning changes was therefore arbitrary and capricious and/or constituted a prejudicial abuse of discretion, in that the County failed to proceed in the manner required by the Planning and Zoning Law and adopted findings of General Plan consistency that are not supported by the evidence.

**Count Thirteen – Subdivision Ordinance Changes Not Consistent With Adequate General Plan**

120. Petitioners here incorporate by reference the preceding paragraphs in their entirety.

121. The Planning and Zoning Law requires that a local subdivision ordinance be consistent with a valid, current, internally consistent General Plan.

122. At the time of the County's approvals of the Project and related General Plan and Area Plan amendments challenged herein, the Monterey County General Plan was incomplete, internally inconsistent, out-of-date, and failed to comply with all applicable statutory criteria under the Planning and Zoning Law.

123. In approving the Project, the County adopted changes to the Monterey County Subdivision Ordinance pertaining to water supply that are inconsistent with the goals, policies, and implementation plans in the County General Plan.

124. The changes to the Monterey County Subdivision Ordinance further directly implicate the inadequacies of the County General Plan.

125. The County's action adopting changes to the Subdivision Ordinance was therefore arbitrary and capricious and/or constituted a prejudicial abuse of discretion, in that the County failed to proceed in the manner required by the Planning and Zoning Law and adopted findings of General Plan consistency that are not supported by the evidence.

**Count Fourteen – Specific Plan Not Consistent With Adequate General Plan**

126. Petitioners here incorporate by reference the preceding paragraphs in their entirety.

127. The Planning and Zoning Law requires that a specific plan be consistent with a valid, current, internally consistent General Plan.

128. At the time of the County's approvals of the Project and related General Plan and Area Plan amendments challenged herein, the Monterey County General Plan was incomplete, internally



1  inconsistent, out-of-date, and failed to comply with all applicable statutory criteria under the State

2  Planning and Zoning Law.

3      129.    In approving the Project, the County adopted the Rancho San Juan Specific Plan.

4      130.    The Rancho San Juan Specific Plan is inconsistent with the goals, policies, and

5  implementation plans in the County General Plan, including those concerning land use, transportation,

6  open space, conservation, and safety.

7      131.    The County's adoption of the Ranchos San Juan Specific Plan further directly implicates the

8  inadequacies of the County General Plan.

9      132.    The County's action in adopting the Rancho San Juan Specific Plan was therefore arbitrary

10  and capricious and/or constituted a prejudicial abuse of discretion, in that the County failed to proceed in

11  the manner required by the Planning and Zoning Law and adopted findings of General Plan consistency

12  that are not supported by the evidence.

13      **Count Fifteen – Development Agreement Not Consistent With Adequate General Plan**

14      133.    Petitioners here incorporate by reference the preceding paragraphs in their entirety.

15      134.    The Planning and Zoning Law requires that a development agreement be consistent with a

16  valid, current, internally consistent General Plan.

17      135.    At the time of the County's approvals of the Project and related General Plan and Area Plan

18  amendments challenged herein, the Monterey County General Plan was incomplete, internally

19  inconsistent, out-of-date, and failed to comply with all applicable statutory criteria under the Planning

20  and Zoning Law.

21      136.    In approving the Project, the County adopted a development agreement with H-Y-H

22  specifying certain terms and conditions under which the Project would be constructed and operated.

23      137.    The development agreement is inconsistent with the goals, policies, and implementation

24  plans in the County General Plan, including those concerning land use, transportation, open space,

25  conservation, and safety.

26      138.    The County's adoption of the development agreement further directly implicates the

27  inadequacies of the County General Plan.

28

 

139. The County's action in adopting the development agreement was therefore arbitrary and capricious and/or constituted a prejudicial abuse of discretion, in that the County failed to proceed in the manner required by the Planning and Zoning Law and adopted findings of General Plan consistency that are not supported by the evidence.

**Count Sixteen – Vesting Subdivision Map Not Consistent With Adequate General Plan**

140. Petitioners here incorporate by reference the preceding paragraphs in their entirety.

141. The Planning and Zoning Law requires that a vesting tentative subdivision map be consistent with a valid, current, internally consistent General Plan.

142. At the time of the County's approvals of the Project and related General Plan and Area Plan amendments challenged herein, the Monterey County General Plan was incomplete, internally inconsistent, out-of-date, and failed to comply with all applicable statutory criteria under the State Planning and Zoning Law.

143. In approving the Project, the County approved a vesting tentative subdivision map for the Project that is consistent with the goals, policies, and implementation plans in the County General Plan, including those concerning land use, transportation, open space, conservation, and safety.

144. The County's approval of the vesting tentative subdivision map further directly implicates the inadequacies of the County General Plan.

145. The County's action in approving the vesting tentative subdivision map was therefore arbitrary and capricious and/or constituted a prejudicial abuse of discretion, in that the County failed to proceed in the manner required by the Planning and Zoning Law and adopted findings of General Plan consistency that are not supported by the evidence.

**THIRD CLAIM FOR RELIEF**

**(Approvals Invalid Due To H-Y-H's Forfeiture Of Corporate Powers)**

146. Petitioners here incorporate by reference the preceding paragraphs in their entirety.

147. Revenue and Taxation Code section 23301 provides that the exercise of the corporate powers, rights and privileges of a foreign corporation in this state may be forfeited if any tax, penalty, or interest that is due and payable under that Code is not paid by the due-dates stated in that section.




148.   Revenue and Taxation Code section 23302 provides that the Franchise Tax Board shall transmit the names of taxpayers to the Secretary of State as to which the suspension or forfeiture provisions of Section 23301 are or become applicable, and the suspension or forfeiture therein provided for shall thereupon become effective.  The certificate of the Secretary of State shall be prima facie evidence of the suspension or forfeiture.

149.   The Franchise Tax Board transmitted the name of H-Y-H to the Secretary of State on March 1, 2004.  The Secretary of State provided an executed certificate of forfeiture by H-Y-H to Petitioners on January 11, 2005.

### Count Seventeen – Invalidation Of Development Agreement Under C.C.P. § 863

150.   Petitioners here incorporate by reference the preceding paragraphs in their entirety.

151.   Code of Civil Procedure section 863 provides that any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of contracts entered into by a public agency.

152.   The County's development agreement with H-Y-H was illegal and improper because H-Y-H's corporate powers, rights, and privileges had been forfeited pursuant to an order by the Secretary of State on March 1, 2004, and H-Y-H was accordingly prohibited from transacting intrastate business at that time, including applying for, receiving, holding, transferring, or acting in reliance on any rights purportedly bestowed by the development agreement.

153.   Petitioners are therefore entitled to an order declaring the development agreement illegal, void, and of no effect.

### Count Eighteen – Other Entitlements Null and Void

154.   Petitioners here incorporate by reference the preceding paragraphs in their entirety.

155.   At the time of the County's December 14, 2004 action approving the General Plan and Area Plan amendments, zone changes, development permit, vesting tentative map, and other entitlements challenged herein, H-Y-H's corporate powers, rights, and privileges had been forfeited in California.

156.   H-Y-H therefore lacks capacity to conduct business in California, and may not receive, hold, transfer, or act in reliance upon any of such approvals and entitlements.




1  The County's grant of such approvals and entitlements to a corporation ineligible to receive, hold,

2  transfer, or act in reliance upon them was therefore improper.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4     157.    This action is brought consistent with the requirements of Public Resources Code section

5  21177 and Code of Civil Procedure 1094.5.  Petitioners objected to the County's approval of the Project

6  orally or in writing during the public comment period provided by CEQA, and/or prior to the close of

7  the public hearing on the project before the issuance of the Notice of Determination.  Petitioners and/or

8  other agencies and individuals raised each of the legal deficiencies asserted in this petition orally or in

9  writing during the public comment provided by CEQA, or prior to the close of the public hearing on the

10  project before the issuance of the Notice of Determination.

11     158.    Petitioners have performed all conditions precedent to filing this action by complying with

12  the requirements of Public Resources Code section 21167.5 in serving notice of the commencement of

13  this action January 13, 2005.

## INADEQUATE REMEDY AT LAW

15     159.    Petitioners declare that they have no plain, speedy, and adequate remedy in the ordinary

16  course of law for the improper action of the County.

## NECESSITY FOR GRANTING STAY OF COUNTY'S APPROVAL

18     160.    Under Code of Civil Procedure section 1094.5(g), this Court may issue a stay order during

19  the pendency of the proceedings unless it is satisfied that a stay would be against the public interest.

20     161.    If Project construction is allowed to commence prior to the Court's final judgment on the

21  merits, Petitioners and the environment will be permanently and irreparably injured from the resulting

22  unmitigated environmental, aesthetic, recreational, and land use impacts.

23     162.    Imposition of a stay would not be against the public interest in that the public will derive no

24  benefit from the commencement of project construction prior to the Court's final judgment.

## NEWLY PRODUCED EVIDENCE

26     163.    In accord with Code of Civil Procedure section 1094.5(e), Petitioners may, prior to or during

27  the hearing on this petition, offer additional relevant evidence that could not, in the exercise of

28  reasonable diligence, have been produced at the administrative hearing.




## ATTORNEYS' FEES

164.    Petitioners are entitled to recover attorneys' fees as provided in Government Code section 800 if they prevail in this action and the Court finds the County's action was the result of arbitrary and capricious action.  Petitioners are further entitled to recover attorneys' fees as provided in Code of Civil Procedure section 1021.5 if they prevail in this action and the Court finds that a significant benefit has been conferred on the general public or a large class of persons, and that the necessity and burden of private enforcement is such as to make an award of fees appropriate.

## PRAYER

WHEREFORE, Petitioners pray for entry of judgment as follows:

1.     For a peremptory writ of mandate directing the County:

(a)     to set aside its December 14, 2004 action certifying an EIR for the Project;

(b)     to set aside its December 14, 2004 action approving Project-related amendments to the County General Plan and Greater Salinas Area Plan;

(c)     to set aside its December 14, 2004 action approving the Rancho San Juan Specific Plan, zoning changes, subdivision ordinance changes, development permit, vesting tentative map, and a development agreement for the Project;

(d)     to refrain from granting any additional permits, entitlements, or other approvals related to the Project to H-Y-H until the County has taken action necessary to bring its approval into compliance with CEQA, the Planning and Zoning Law, and the County Code;

(e)     to comply with CEQA in any subsequent action or actions taken to approve the Project.

(f)  ·   to bring its General Plan into compliance with all applicable provisions of Government Code section 65300, *et seq.* within 120 days.

2.     For an order determining that the County's action entering into a development agreement with H-Y-H be determined to be illegal, null and void, and of no effect.

3.     For an order declaring that H-Y-H is ineligible to receive, hold, transfer, or act in reliance on the permits and entitlements granted by the County on December 14, 2004 and challenged herein, and that such permits and entitlements are therefore null and void and of no effect.




1      4.     For an order staying the effect of the County's actions pending the outcome of this

2  proceeding.

3      5.     For a preliminary and permanent injunction directing the County and H-Y-H to cease and

4  refrain from engaging in any action related to the Project that could result in any change or alteration in

5  the physical environment until the County takes any necessary action to bring its action into compliance

6  with CEQA, the Planning and Zoning Law, and the County Code.

7      6.     For their costs of suit.

8      7.     For an award of attorneys' fees.

9      8.     For other legal or equitable relief that the Court deems just and proper.

10

11  Dated: January 14, 2005                    Respectfully submitted,

12                                            M. R. WOLFE AND ASSOCIATES

13

14

15                                   By:_____

16                                          Mark R. Wolfe
                                            John H. Farrow
17

18                                          Attorneys for Plaintiffs and Petitioners
                                            LANDWATCH MONTEREY COUNTY,
19                                          and RANCHO SAN JUAN OPPOSITION
                                            COALITON
20

21

22

23

24

25

26

27

28

 

## VERIFICATION

1

2      I, Gary A. Patton, declare:

3      I am the Executive Director of LandWatch Monterey County, the Petitioner in the

4  above-captioned action.  I have read the foregoing PETITION FOR WRIT OF MANDATE;

5  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; COMPLAINT FOR

6  CONTRACT VALIDATION and know the contents thereof.  The same is true of my own

7  knowledge, except as to those matters which are therein alleged on information and belief, and as

8  to those matters, I believe them to be true.

9      I am signing this document at Salinas, California, and affirm, under penalty of perjury,

10  that the foregoing is true and correct.

11

12  Dated: January 12, 2004                    _____

13                                                            Gary A. Patton

14