# Exhibit F

## FINDINGS & EVIDENCE
## GENERAL PLAN/GREATER SALINAS AREA PLAN AMENDMENTS

### Before the Board of Supervisors in and for the
### County of Monterey, State of California

| | |
|---|---|
| Resolution No. <u>05-305</u> | ) |
| Resolution of the Monterey County Board of | ) |
| Supervisors to Amend the Monterey County | ) |
| General Plan Goal No. 30 and Policy Nos. | ) |
| 25.1.1; 30.0.3; and 39.2.1; and the | ) |
| Greater Salinas Area Plan Land Use Plan | ) |
| (Figure 13); Policy Nos. 26.1.4.1; | ) |
| 39.1.4.1; 40.1.1.1; Part II, Chapter V | ) |
| Defining Commercial Land Use Designations | ) |
| in the Area Plan; and Amend certain | ) |
| Guidelines in the Rancho San Juan Area of | ) |
| Development Concentration (ADC) | ) |
| Development Guidelines and Principles | ) |
| Adopted pursuant to Policy 26.1.4.1. | ) |

Amendments to the Monterey County General Plan and the Greater Salinas Area Plan came on for public hearing before the Board of Supervisors on November 7, 2005. Having considered all the written and documentary evidence, the administrative record, the staff report, oral testimony, and other evidence presented, the Board of Supervisors hereby finds and decides as follows:

## I.    RECITALS

1.    Section 65300 et seq. of the California Government Code requires each county to adopt a comprehensive, long-term General Plan for the physical development of each county.

2.    On September 30, 1982, the Board of Supervisors of the County of Monterey ("County") adopted a county-wide General Plan ("General Plan").

3.    On October 14, 1986, the Board of Supervisors adopted the Greater Salinas Area Plan ("Area Plan") as an amendment to the General Plan.

4.    The Greater Salinas Area Plan "Land Use Plan" (Figure 13) provides a graphic representation of the general distribution, location, extent and intensity of land uses and transportation routes in this planning area.

5.    Pursuant to Government Code sections 65350 et seq., the County may amend the adopted General Plan provided the County follows certain procedures, including that the County Planning Commission hold a noticed public hearing and make a

**000182**

written recommendation to the Board of Supervisors on the proposed amendment of the General Plan.

6. Section 65860(a) of the Government Code requires that zoning be consistent with the General Plan.

7. Consistent with the General Plan and the Area Plan the County prepared the first draft of the Specific Plan for the Rancho San Juan Area of Development Concentration (ADC) on July 21, 2003. An amended draft was prepared and circulated for public review on March 15, 2004. Subsequently, an "errata" sheet with additional changes to the Specific Plan was developed and circulated for review and comments on May 17, 2004.

8. All policies of the General Plan and the Area Plan have been reviewed by the Planning and Building Inspection Department staff to ensure that the proposed amendments maintain the compatibility and internal consistency of the General Plan and the Area Plan. This level of staff review also ensures that the draft Revised Rancho San Juan Specific Plan is consistent with the General Plan and Area Plan. Appendix C (Revised, as attached to the November 7, 2005 Board of Supervisors Staff Report) of the Revised Specific Plan includes a consistency analysis for the Rancho San Juan Specific Plan as it relates to goals and policies in the Monterey County General Plan and the Greater Salinas Area Plan.

9. The Final Environmental Impact Report (Final EIR 04-01) ("Final EIR") prepared for the Rancho San Juan Specific Plan and HYH Property Projects included and analyzed the environmental impacts associated with the General Plan and Area Plan amendments.

10. On November 15, November 16, November 29, December 1 and December 2, 2004, the Monterey County Planning Commission held a duly noticed public hearing to consider and make recommendations to the Board of Supervisors regarding certification of the FEIR, the proposed General Plan and Area Plan amendments, the proposed Rancho San Juan Specific Plan, proposed related amendments to the County's zoning and subdivision ordinances, the proposed Combined Development Permit for HYH Property Project (Butterfly Village), and a proposed ordinance approving a development agreement. At least 10 days before the first public hearing date, notices of the hearing before the Planning Commission were published in both the Monterey County Herald and the Salinas Californian and were also posted on and near the property and mailed to property owners within 300 feet of the subject property.

11. On December 2, 2004, the Planning Commission adopted a resolution recommending that the Board: (1) Not certify the Final EIR and associated Mitigation Monitoring and/or Reporting Plan; (2) Not approve the proposed amendments to the Monterey County General Plan and Monterey County Greater Salinas Area Plan; (3) Not adopt the proposed Rancho San Juan Specific Plan; (4)

Not approve the proposed amendments to Titles 19 and 21 of the Monterey County Code; (5) Deny the Combined Development Permit; and (6) Not approve the proposed Development Agreement between the HYH Corporation and the County of Monterey.

12. Prior to adopting the General Plan amendments, the Board of Supervisors certified the Rancho San Juan Final EIR.

13. On December 14, 2004, the Monterey County Board of Supervisors approved the Rancho San Juan Specific Plan Project and HYH Property Project and certified an environmental impact report (EIR) for the Projects in accordance with the California Environmental Quality Act, Public Resources Code section 21000 et seq. (CEQA). In its resolution adopting the Specific Plan, the Board of Supervisors recognized the public controversy regarding continuing to have an Area of Development Concentration (ADC) designated in the Rancho San Juan area. The Board directed staff to return to the Board within six months with various recommendations, including consideration of the following: 1) removal of the ADC from the General Plan; 2) amendment or rescission of the adopted Specific Plan, as appropriate; and/or 3) amendment of the adopted Specific Plan boundaries. In an effort to address the Board's direction, the County prepared a Revised Specific Plan, which reduced the scope of the Specific Plan to the boundaries of the HYH property (Butterfly Village, PLN020470). At least 10 days before the first public hearing date, notices of the hearing before the Board were published in both the <u>Monterey County Herald</u> and the <u>Salinas Californian</u> and were also posted on and near the property and mailed to property owners within 300 feet of the subject property.

14. On September 20, 2005, the County released the Revised Specific Plan for Rancho San Juan. The revised Rancho San Juan Specific Plan (GPZ050005) establishes new land use designations that are intended to replace the existing land use designations in the Area Plan and establishes zoning classifications consistent with proposed land use designations in the specific plan area. The Revised Specific Plan responds to directives contained in the resolution approved by the County Board of Supervisors on December 14, 2004 adopting the Rancho San Juan Specific Plan (Resolution No. 04-424). The boundaries of the Revised Specific Plan would correspond to the 671-acre HYH Property (Butterfly Village) approved Vesting Tentative Subdivision Map. The land uses would include 1,147 residential units including single- and multi-family, 45,000 square feet of retail commercial, an 18-hole golf course including 71 guest villas/timeshares, 11.8 acres of public parks, 141.2 acres of designated conservation open space, a wastewater treatment plant and police and fire stations.

15. On October 7, 2005, the County released an EIR Addendum for the Revised Specific Plan for Rancho San Juan pursuant to the requirements of Section 15164 of the CEQA Guidelines.

Board of Supervisors Resolution
GP & GSAP Amendments

**000184**

16. On October 19, 2005 the Monterey County Planning Commission held a duly noticed public hearing to consider and make recommendations to the Board of Supervisors regarding certification of the EIR Addendum, the proposed General Plan and Area Plan amendments, the Rancho San Juan Revised Specific Plan and proposed amendments to the County's Zoning Ordinance.  At least 10 days before the first public hearing date, notice of the hearing before the Planning Commission was published in the Salinas Californian and was also posted on and near the property and mailed to property owners within 300 feet of the subject property.

17. On October 19, 2005, the Planning Commission recommended that the Board of Supervisors certify the EIR Addendum, adopt the General Plan Amendments, zone the HYH property with a Specific Plan district, and adopt the Revised Specific Plan while rescinding the Specific Plan approved on December 14, 2004.

18. On November 7, 2005 the Monterey County Board of Supervisors held a duly noticed public hearing to consider certification of the EIR Addendum, the proposed General Plan and Area Plan amendments, the Rancho San Juan Revised Specific Plan and proposed amendments to the County's Zoning Ordinance.  At least 10 days before the first public hearing date, notice of the hearing before the Board of Supervisors was published in the Salinas Californian and Monterey Herald and was also posted on and near the property and mailed to property owners within 300 feet of the subject property. ·

19. On October 28, 2005, the County prepared a Revised General Plan Consistency Analysis (Revised Appendix C of the Revised Specific Plan).  The Revised Appendix C contains an analysis of the Specific Plan's compatibility with the 1982 General Plan, the Greater Salinas Area Plan, and the Area of Development Concentration (ADC) by examining its consistency with General Plan goals, objectives, policies, guidelines, general land uses and programs selected for relevancy to the RSJ Revised Specific Plan.  A copy of the Revised Appendix C is available at the Planning and Building Inspection Department, 168 W. Alisal St., 2nd Floor, Salinas, CA  93901.

## II.   DECISION

**NOW THEREFORE, BE IT RESOLVED** that the Board of Supervisors hereby considers the Revised General Plan Consistency Analysis (Revised Appendix C of the Revised Specific Plan). and adopts the following amendments to the Monterey County General Plan and the Greater Salinas Area Plan:

*NOTE: The entire policy for each amendment is included below.  Added language is underlined and language to be deleted is identified with a strikethrough.*

A.   Amendments to the Monterey County General Plan

Board of Supervisors Resolution
GP & GSAP Amendments

**A-1.    Goal 30 (General Plan):** Agricultural Viability of Farmland

*"To protect all viable farmlands designated as prime, of statewide importance, unique, or of local importance from conversion to and encroachment of non-agricultural uses, including the adoption of a Specific Plan for Rancho San Juan which implements an alternative farmland preservation strategy."*

**A-2.    Policy 25.1.1 (General Plan):** Economic Agricultural Activities.

*"The County shall establish the preservation, enhancement, and expansion of viable or potentially viable prime farmlands, farmlands of statewide importance, unique farmlands, and farmlands of local importance as the top land use priority for guiding further economic development unless there is a satisfactory showing that such farmlands are not viable or potentially viable.    The preservation, enhancement, and expansion of viable or potentially viable prime farmlands, farmlands of statewide importance, unique farmlands, and farmlands of local importance may be addressed through the adoption of a Specific Plan for Rancho San Juan which implements an alternative farmland preservation strategy."*

**A-3.    Policy 30.0.3 (General Plan):** Subdivisions and Impacts on Neighboring Properties

*"The County shall allow division of viable farmland designated as prime, of statewide importance, unique, or of local importance only for exclusive agricultural purposes, when demonstrated not to be detrimental to the agricultural viability of adjoining parcels, or in accordance with the policies of a Specific Plan for Rancho San Juan which implements an alternative farmland preservation strategy."*

**A-4.    Policy 39.2.1 (General Plan):** Road and Highway Transportation

*"All new road and interior circulation systems shall be designed, developed, and maintained according to adopted County standards, or in accordance with the comprehensive road and circulation standards contained in an adopted Specific Plan for Rancho San Juan."*

**B.    Amendments to the Greater Salinas Area Plan (Area Plan)**

**B-1.    Land Use Plan Map (Area Plan):** Figure 13

Amend the Land Use Plan map (Figure 13) to show only the letters RSJ-SPA (Rancho San Juan - Specific Plan) Area for the Revised Rancho San Juan Specific Plan area. Amend the legend on the map to identify the area as the Revised Rancho San Juan Specific Plan Area

**000186**

and refer to the Revised Rancho San Juan Specific Plan (Figure 2-1) for land use details.

**B-2.   Policy 26.1.4.1 (Area Plan):**  Boundaries of ADC

*"The ~~general~~ <u>approximate 671-acre</u> area <u>generally</u> located north of Russell Road between Harrison Road, San Juan Grade Road, and the boundary between Rancho Bolsa Nueva y Moro Cojo and Rancho Bolsa de Escarpines<u>, and identified on Figure 1-6</u> shall be designated as an Area of Development Concentration. Area Plan land uses shown within the ADC shall only be developed after a specific plan on the entire ADC has been prepared and adopted. The specific plan shall ~~incorporate all of~~ <u>be compatible with the</u> <u>Development</u> <u>Guidelines</u> and <u>Principles</u> for the Rancho San Juan ADC adopted as part of the Greater Salinas Area Plan."*

**B-3.   Policy 39.1.4.1 (Area Plan):** Land Use and Traffic Impacts

*"Implementation of all land uses within the Greater Salinas Area Plan shall occur only if there will be no significant unmitigated impact on traffic circulation, <u>or in accordance with a comprehensive traffic mitigation program contained in an adopted Specific Plan for Rancho San Juan.</u>*

**B-4.   Policy 40.1.1.1 (Area Plan)** Scenic Highways

*"The Highway 101 bypass shall be designated a scenic highway and subject to the same scenic standards held in the North County Area Plan. The design of the Highway 101 bypass shall include ~~a minimum of~~ two interchanges ~~within the ADC area as specified within the ADC Specific Plan~~ <u>if considered necessary by CalTrans and TAMC. One interchange shall be located north of Russell Road and west of Harrison Road.</u>  The bypass design shall also incorporate sound deflection berms with appropriate landscaping and such measures shall be held consistent with its 'scenic highway' designation."*

**B-5.   Part II, Chapter V (Area Plan)** Commercial

*"This category applies to areas which are suitable for the development of retail and service commercial uses, including visitor accommodation and professional office uses.  In general, building intensity for commercial areas shall conform to standards which limit building height to a maximum of 35 feet and lot coverage to a maximum of 50 percent, excluding parking and landscaping requirements <u>or in accordance with the commercial development standards contained in an adopted Specific Plan for Rancho San Juan.</u>*

**000187**

B-6.    Rancho San Juan Area of Development Concentration
Guidelines and Principles

*NOTE: The Guidelines are included in entirety below. Each guideline to be amended is
identified by italicized font. Added language is <u>underlined</u> and language to be deleted
is identified by a ~~strikethrough.~~*

### RANCHO SAN JUAN AREA OF DEVELOPMENT CONCENTRATION
### DEVELOPMENT GUIDELINES AND PRINCIPLES*

*\*NOTE:    This body of Development Guidelines and Principles for guiding the
preparation of the Rancho San Juan ADC Specific Plan was adopted
in conjunction with Policy 26.1.4.1 (GS).*

### GENERAL DEVELOPMENT GUIDELINES

The Salinas North Area of Development Concentration shall be developed as a planned
community with ~~industrial,~~ residential, commercial, public, and open space uses.

The ADC Specific Plan shall include phasing of development, transportation
improvements and other traffic mitigation for Highway 101 and adjacent arterial
roadways.

The adopted Highway 101 bypass right of way traverses the ADC area and shall be
addressed within the ADC specific Plan in conjunction with internal and external traffic
circulation improvements.

*~~The Highway 101 freeway bypass should provide the major access route to the site;
major arterials within the site will directly connect to freeway interchanges.~~*

Any parcel within the ADC which contains any portion of the proposed right-of-way of
the Highway 101 bypass shall have conveyed such right-of-way to the County or
Caltrans before development approval. *~~Even if all the right-of-way has been conveyed,
development which has any significant unmitigated impact shall not commence until the
Highway bypass construction date has been set.~~*

*~~Residential development of the ADC shall be developed in three phases (shown in
Figure 13). Those projects closest to industry (Phase I) should be developed within the
first 1-5 years of Specific Plan adoption. The upland residential development (Phase
II) should be developed 5-10 years after Specific Plan adoption. Phase III shows
residential land uses and should be built out 10-20 years after Specific Plan adoption.
If housing growth exceeds the County's ability to provide needed jobs, some Phase III
residential land uses should be redesignated to industrial to meet the demand for jobs,
phased in a sequence that provides for a balance between housing and jobs as soon as
specified in the Specific Plan.~~*

**000188**

~~The majority of the flat areas, particularly those closest to Highway 101, within the site should be reserved for light industrial uses.~~

The rolling hill areas of the site should be designated for clustered residential, commercial, office, and public uses.

*The valleys ~~of the rolling hill areas~~ should generally be used for circulation, flood control, recreation, and open space uses.*

The steep north facing slopes within the site should be reserved for open space and conservation uses.

The south and west facing slopes within the site should be used for compactly clustered, terraced residential uses to take maximum advantage of views and sun exposure.

Neighborhood serving commercial and public uses should be integrated into the community to maximize easy access and create community activity centers.

Runoff from the site shall be controlled to alleviate downstream flooding potential.

Wastewater treatment, storage and disposal shall be provided on lands within and adjacent to the site.

Completed Master Plans for sewer and water systems prepared as part of the ADC Specific Plan shall first require approval from the Director of Environmental Health before such Master Plans can be considered a part of the ADC Specific Plan. Such Master Plans shall specify the method of treatment and disposal and include a 120 day storage requirement for all treated wastewater.

*Services in the ADC shall be provided through the use of a Community Facilities District (CFD) or other appropriate funding mechanism to finance and carry out the construction of police, fire, flood and storm protection, parks and any other facilities which may be found by the Board of Supervisors to be appropriate under Chapter 2.5 of the California Government Code. A Community Services District (CSD) ~~or County Service Area (CSA)~~ shall be used to provide for the operations and maintenance for those facilities not already provided for under a CFD and/or for those services not already provided for under existing County Special Districts. These services may include sewer, water, roads and transportation, street lighting, utility undergrounding, and any other facilities which may be found by the Board of Supervisors to be appropriate under Section 61000 et. Seq. of the California Government Code. ~~The CFD and CSD or CSA shall be considered "dependent" Districts with the Board of Supervisors acting as the District's Board of Directors~~.*

### INDUSTRIAL DEVELOPMENT PRINCIPLES

~~Light clean industrial uses that offer long-term employment opportunities to the region shall be encouraged to locate within the site.~~

Board of Supervisors Resolution
GP & GSAP Amendments

**000189**

Industrial uses that need large quantities of water for production could cause groundwater contamination or significant point source air pollution emissions shall not be permitted within the ADC area.

Industrial development will be planned in clusters to maximize external landscaped open space and make efficient use of parking facilities, pedestrian and automobile circulation systems, and internal courtyards and common spaces.

Industrial development will be attractively designed and landscaped in a park-like manner in conformance with design criteria associated with "planned industrial parks". Industrial buildings and parking facilities should be set back with 100 foot open space buffers from adjacent incompatible land uses to minimize potential conflicts.

A maximum overall ground coverage of generally 25% is allowed for buildings within designated industrial areas.

A visitor serving accommodation such as a hotel should be encouraged as part of the ADC. The nature and extent of such a facility should be determined only after the proper marketing and feasibility studies have been prepared and evaluated.

### RESIDENTIAL DEVELOPMENT PRINCIPLES

The average gross density of the ~~planned~~ residential areas (including the mixed use areas) will be at least ~~5.1 units per acre~~ 4.8 units per acre.

High-density residential development should be clustered at a net density of at least 15 units per acre to maximize external landscaped open space areas and internal courtyards and common spaces and leave valley floors open for drainage, circulation, and recreation.

A mixture of housing types at various densities will be provided on the site according to site conditions and clustering opportunities.

The highest net densities of residential development should be located on south and west facing slopes and adjacent to open space recreation areas.

Residential development shall be attractively designed and landscaped in conformance with design criteria associated with "planned residential areas."

The design of housing should incorporate private, semi-private, and public outdoor areas.

Clustered housing areas should be planned to encourage a sense of neighborhood community through provision of common open space, recreation, and public facility areas.

**000190**

~~Fifteen~~ _A minimum of_ fifteen percent of the total housing units developed shall be affordable to low and moderate income households and provided within the site and integrated into the overall development as the project is built out. Deed restrictions will be used to ensure that affordable units are retained.

## COMMERCIAL DEVELOPMENT PRINCIPLES

Neighborhood serving commercial uses should be integrated into the planned residential area.

Commercial uses should be located to be highly accessible by automobile, bicycle, and walking.

A mixture of neighborhood serving commercial uses will be located along with facilities such as street furniture which maximize opportunities for social interaction and enjoyment of the natural beauty of the site.

~~Commercial uses that serve employees of industrial areas should be located within or adjacent to planned industrial parks.~~

Mixed use development of ground floor commercial and upper floor residential should be provided in selected areas of the site.

Commercial and public uses should be integrated into a community center for the site.

Commercial uses will be developed in conformance to design criteria associated with planned commercial and residential areas.

## PUBLIC FACILITIES DEVELOPMENT PRINCIPLES

~~Public uses including a fire station, library, schools, community centers and, if needed, a police station should be provided within the site.~~

~~Schools should be located to provide convenient access to the community.~~

~~School Districts will be consulted when enrollment projections are made and Planning Department Staff will consult with School Districts in locating new schools.~~

~~Fire and police stations should be located in areas adjacent to major arterials and freeway interchanges.~~

~~Other public community facilities should be located in the community center with neighborhood serving commercial uses.~~

Public facilities should be developed in phases as part of a master facilities plan as the

Board of Supervisors Resolution
GP & GSAP Amendments

**000191**

project area is built out to respond to community needs.

~~A community facility such as a major religious institution is considered appropriate and desirable for inclusion within the boundaries of the ADC. The facility should be about 15-20 acres in size and should be located adjacent to the proposed Community Park. If a Church site has been purchased and planned for development, then the specific plan may show 10 acres of "High Density Residential" adjacent to the church site. Both uses are to be included within the ADC boundary and are to receive waste disposal services from within the ADC. If a church site is not secured by the time the specific plan is adopted, then the area shall be shown as "Industrial" and the residential provision shall be deleted.~~

## OPEN SPACE, RECREATION, AND CONSERVATION DEVELOPMENT PRINCIPLES

Community open space areas shall be provided in the planned residential area for recreation, visual aesthetics, drainage, flood control, conservation, noise buffer, and circulation uses.

Open spaces areas shall separate and define clustered residential neighborhoods and other distinct land uses from each other.

Recreation facilities including hiking and equestrian trails, bicycle paths, picnic areas, playgrounds and an 18-hole golf course shall be provided in open space areas.

~~Open space should be provided in the planned industrial area for aesthetics, temporary flood control ponds, recreation, and noise buffers.~~

Open space areas should be provided within clustered residential areas as internal public spaces for neighborhood use and enjoyment.

Existing stands of native oak trees shall be retained to the maximum extent possible and left in open space. Additional stands of oaks and other native vegetation shall be planted in appropriate open space areas.

Flood control ponds should enhance and restore wildlife habitats and provide recreation opportunities.

Riparian vegetation should be established or re-established in appropriate areas of the site.

## CIRCULATION DEVELOPMENT PRINCIPLES

~~Arterial streets should connect industrial and residential areas to the Highway 101 bypass and to County arterial roads such as Russell Road and San Juan Grade Road.~~

Board of Supervisors Resolution
GP & GSAP Amendments

Collector streets should connect to arterial streets from residential clusters and industrial development areas.

All residential clusters shall have two routes to enter and exit for emergency situations.

On street parking should generally be discouraged for arterial streets and major collector streets. Off street parking areas will be provided in industrial, commercial, and high density residential areas.

Most roadways should be developed in a phased manner as development of the site proceeds. Arterial roadways will be developed at the outset of the project.

Roadways should be designed to discourage the flow of through traffic that does not have destinations within the site.

Roadways shall be located to minimize the need for grading of slopes and filling of natural drainage ways.

### INFRASTRUCTURE DEVELOPMENT PRINCIPLES

Wastewater treatment, storage, and disposal shall be provided to serve development of the site. The capacity of these facilities will be expanded incrementally as part of a master facilities plan as development proceeds.

The wastewater treatment, storage, and disposal facilities and other facilities and services shall be operated through a newly formed County Sanitation District, Community Facilities District or Community Services District.

Wastewater shall be treated to a level appropriate for spray irrigation in the open space areas of the industrial area and noise buffer areas along the freeway.

*At the onset of the project, wastewater treatment, storage, and disposal facilities will be located within the site. As development precedes an additional disposal area shall be provided adjacent to the site in the Rancho San Juan North.*

*Water service will be provided from wells located within the site. A public or private water utility or other appropriate entity shall be formed to supply water and maintain the facilities. In emergency circumstances, a public or private water utility may supply water from a mixture of onsite wells and offsite sources."*

### FLOOD CONTROL, GRADING, AND DRAINAGE DEVELOPMENT PRINCIPLES

Flood control ponds shall be provided for each drainage basin in the site to hold peak



runoff flows and reduce downstream flooding.

Flood control ponds shall be designed to mitigate peak runoff increases resulting from development of the site.

Open space areas and parking lots should be planned to serve as temporary overflow areas during heavy rainfall periods.

Grading of the site shall be conducted to follow the topography of the site and maintain its rolling hill character. Cut and fill grading on steep slopes shall be limited.

Wherever feasible, prominent natural drainage ways should be maintained. These drainage ways will enhance the open space recreation and trails system of the site.

### WATER CONSERVATION DEVELOPMENT PRINCIPLE

Development within the site will use flow reduction devices and other water conservation fixtures. Residential open space areas should be landscaped with vegetation that has low irrigation requirements. Industrial landscaping should be irrigated with reclaimed water except immediately adjacent to outdoor activity areas.

### DESIGN REVIEW PRINCIPLES

As the planning for the Rancho San Juan ADC progresses, detailed design criteria will be developed to guide industrial, commercial, public, and residential development. The guidelines will provide both a standard for guidance and evaluation while leaving flexibility for creative architectural concepts.

A design review committee will be formed by the County to evaluate proposed projects.

*Development in the Rancho San Juan ADC shall occur under the guidance of specific development standards and criteria and shall employ such concepts as natural, or earth-tone exterior treatments, articulated facades, and landscaping amenities. The standards should be approved by* ~~a design review committee composed of architects and design professionals formed by the County to evaluate proposed projects.~~ *the County Board of Supervisors through the Specific Plan and Site Plan approval process."*

### AREA LAND USE PLAN

#### Area of Development Concentration

~~The area bounded by Harrison, Russell, San Juan Grade Road, and the Planning Area Boundary has been designated as the Rancho San Juan Area of Development Concentration according to criteria specified in the County's adopted Growth Management Policy (an ADC study area designation is specified for this area in the~~

Board of Supervisors Resolution
GP & GSAP Amendments

**000194**

*countywide General Plan). The Land Use Plan (Figure 13) shows mainly industrial and
high density residential land uses for areas to be developed.*

*As stated in Policy 26.1.4.1 (GS), land uses within this area are illustrative only and a
specific land use configuration as well as plans for sewers, circulation, drainage, and
other factors will be determined at a more detailed planning level through a Specific
Plan (Specific Plans are defined in Govt. Code Sec. 65450-65457). No development in
the ADC will take place until a specific plan is adopted. Furthermore, the Specific Plan
will include the development guidelines and principles adopted as part of this Area Plan.*

*The 2,000-acre Rancho San Juan ADC is intended to provide for the County's long-term
(15-20 years) need for residential and economic growth. It is anticipated the ADC will
accept about 5,500 new residences, which averages about 300 new dwelling units per
year. This rate is about half the current annual rate of household growth for the
unincorporated area. The residential growth pattern departs from the prevailing pattern
in Monterey County because it proposes residential clustering rather than subdivision
into 1-10 acre minimums. Development guidelines specify a cluster/open space pattern
allowing better land utility and reducing the occurrence of hillsides scarred by the access
and site development needs of individual estates.*

*The ADC will also accept about 500 acres of planned industrial development. Industrial
land uses were judged appropriate here because of the perceived need to add new
industry to the current economic base and because the State Highway 101 bypass route
through the ADC effectively linked this area to other regional light industry networks.*

*After the Rancho San Juan ADC has been established the foothills/bench area east of
Old Stage Road should be designated as an "ADC study area" for the next planning
cycle.*

**PASSED AND ADOPTED** on this 7th day of November 2005, upon motion of Supervisor
Smith , seconded by Supervisor   Armenta , by the following vote, to-wit:

> AYES: Supervisors Armenta, Calcagno, Lindley, and Smith
> NOES: Supervisor Potter
> ABSENT: None

I, Lew Bauman, Clerk of the Board of Supervisors of the County of Monterey, State of California, hereby
certify the foregoing is a true copy of the original order of said Board of Supervisors duly made and entered
in the minutes thereof Minute Book 72 , on November 7, 2005.

Dated: November 8, 2005

> Lew Bauman, Clerk of the Board of Supervisors,
> County of Monterey, and State of California.
>
> By _Cynthia Juarez_
> Cynthia Juarez, Deputy

Page 14 of 14

**000195**

# Exhibit G

FINDINGS & EVIDENCE
REVISED RANCHO SAN JUAN SPECIFIC PLAN

Before the Board of Supervisors in and for the
County of Monterey, State of California

Resolution No. 05-321                )
Resolution of the Monterey County    )
Board of Supervisors Rescinding the  )
Rancho San Juan Adopted Specific Plan )
and Adopting the Revised Rancho San  )
Juan Specific Plan.                   )

The Rancho San Juan Revised Specific Plan (GPZ050005) came on for public hearing
before the Monterey County Board of Supervisors on November 7, 2005.  Having
considered all the written and documentary evidence, the administrative record, the staff
report, oral testimony, and other evidence presented, the Board of Supervisors hereby
finds and decides as follows:

## I.    RECITALS:

A.    The 1982 Monterey County General Plan designated certain unincorporated areas
of the County as "Area of Development Concentration (ADC)" study areas to
determine their suitability for future development.  The Greater Salinas Area Plan,
adopted in 1986, established the Rancho San Juan ADC, comprised of
approximately 2,150 acres, including the Property.  Policy 26.1.4.1 of the GSAP
provides that the Rancho San Juan ADC shall only be developed after the County
has prepared and adopted a Specific Plan consistent with the policies, goals, and
objectives of the GSAP and General Plan.

B.    The County prepared a draft specific plan for Rancho San Juan (DEV0301), dated
March 15, 2004, including the revisions shown on the Rancho San Juan Specific
Plan Errata Sheet dated May 17, 2004 (hereafter "Rancho San Juan Specific
Plan.").  The proposed Rancho San Juan Specific Plan area consists of 2,581 acres
and is located in northern portion of Monterey County in a region known as the
Greater Salinas Area.   The properties are fronting on and easterly of State
Highway 101, north of Russell Road, northeast of San Juan Grade Road, Greater
Salinas Area (113-102-014-000; 113-112-000-000M; 113-120-090-000; 113-121-
000-000M; 113-151-000-000M; 113-161-000-000M; 113-172-025-000; 113-211-
003-000; 113-212-003-000M, 113-261-000-000M; 113-271-000-000M; 113-272-
000-000M).  The Specific Plan includes 4,000 mixed residential units throughout
the development; a town center with 374,000 square feet of community and mixed
use retail space; a 2.4 million square feet employment center with a variety of light
industrial, business and office park space, 243,000 square feet of office space, an 18-
hole golf course and clubhouse; 568.5 acres of enhanced open space with a trail
system, 84.5 acres of public parkland; and installation of infrastructure.

**000196**

BOS Resolution

C.   On November 15, November 16, November 29, December 1 and December 2, 2004, the Monterey County Planning Commission held a duly noticed public hearing to consider the following actions and projects: the proposed Rancho San Juan Specific Plan (DEV0301); related proposed amendments to the Monterey County General Plan, Greater Salinas Area Plan, County zoning ordinance (Title 21) and County subdivision ordinance (Title 19); a proposed Combined Development Permit (PLN020470) consisting of a Vesting Tentative Map and use permits for an 18-hole golf course, development on 30% slope, a wastewater plant, and tree removal for the HYH Property Project, commonly known as Butterfly Village, and a proposed development agreement between the County and HYH Corporation in connection with the Butterfly Village Project.

D.   On December 2, 2004, the Planning Commission adopted a resolution recommending that the Board:  (1) Not certify the Final EIR and associated Mitigation Monitoring and/or Reporting Plan; (2) Not approve the proposed amendments to the Monterey County General Plan and Monterey County Greater Salinas Area Plan; (3) Not adopt the proposed Rancho San Juan Specific Plan; (4) Not approve the proposed amendments to Titles 19 and 21 of the Monterey County Code; (5) Deny the Combined Development Permit; and (6) Not approve the proposed Development Agreement between the HYH Corporation and the County of Monterey.

E.   On December 3, December 7 and December 14, 2004, the Monterey County Board of Supervisors held duly noticed public hearings to consider the following actions and projects: the proposed Rancho San Juan Specific Plan (DEV0301); related proposed amendments to the Monterey County General Plan, Greater Salinas Area Plan, County zoning ordinance (Title 21) and County subdivision ordinance (Title 19); a proposed Combined Development Permit (PLN020470) consisting of a Vesting Tentative Map and use permits for an 18-hole golf course, development on 30% slope, a wastewater plant, and tree removal for the HYH Property Project, commonly known as Butterfly Village, and a proposed development agreement between the County and HYH Corporation in connection with the Butterfly Village Project.

F.   In accordance with the California Environmental Quality Act (CEQA), a Draft EIR was prepared to assess the potential adverse environmental impacts from the project and was circulated starting on May 18, 2004.  The public review period ended August 9, 2004.  The issues that were analyzed in the Draft EIR include land use, traffic and circulation, landform alteration/visual quality, biology, archaeological/historical resources, noise, air quality, soils and geology, hydrology/water quality, water resources, agriculture and public services and utilities.  Mitigation measures are proposed to mitigate project impacts.  A Final EIR was prepared, consisting of the May 2004 DEIR, a Comments and Responses Document containing copies of all written and oral comments, a list of commentators, and all responses to oral and written comments, and proposed

000197

revisions to the Draft EIR in accordance with CEQA. The Final EIR was made available to the public on November 8, 2004. The Planning Commission recommended that the Board not certify the FEIR. By separate resolution, the Board of Supervisors certified the FEIR and adopted the mitigation measures incorporated therein (see Resolution No. 04-423 and Exhibit A-1 thereto).

G.   By separate resolution, the Board of Supervisors approved amendments to the Monterey County General Plan and Greater Salinas Area Plan (hereafter "the General Plan Amendments") to ensure consistency between the Rancho San Juan Specific Plan and the General Plan and Greater Salinas Area Plan (see Resolution No. 04-421). By approving these General Plan Amendments, the Rancho San Juan Specific Plan was determined to be consistent with the General Plan and GSAP and will implement the overall goals and objectives of those plans for the Specific Plan area.

H.   The Board of Supervisors approved ordinances amending Title 19-Subdivision Ordinance (Ordinance 04251) and Title 21-County Zoning Ordinance (Ordinance 04252) to create a "Specific Plan" zoning district and ensure that the zoning and subdivision ordinances are consistent with the Specific Plan.

I.    The Board of Supervisors considered errata sheets (dated December 9, 2004, December 14, 2004 and presented to the Board during the public hearing on December 14, 2004) that lists recommended changes to the draft Specific Plan from the time that the draft was released in March 2004.

J.   In its resolution adopting the Specific Plan, the Board of Supervisors recognized the public controversy regarding continuing to have an Area of Development Concentration (ADC) designated in the Rancho San Juan area. The Board directed staff to return to the Board within six months with various recommendations, including consideration of the following: 1) removal of the ADC from the General Plan; 2) amendment or rescission of the adopted Specific Plan, as appropriate; and/or 3) amendment of the adopted Specific Plan boundaries. In an effort to address the Board's direction, the County prepared a Revised Specific Plan, which reduced the scope of the Specific Plan to the boundaries of the HYH property (Butterfly Village, PLN020470). At least 10 days before the first public hearing date, notices of the hearing before the Board were published in both the Monterey County Herald and the Salinas Californian and were also posted on and near the property and mailed to property owners within 300 feet of the subject property.

K.   On September 20, 2005, the County released the Revised Specific Plan for Rancho San Juan. The Revised Specific Plan responds to directives contained in the resolution approved by the Board of Supervisors on December 14, 2004 adopting the Rancho San Juan Specific Plan (Resolution No. 04-424). The boundaries of the Revised Specific Plan would correspond to the 671-acre HYH Property (Butterfly Village) approved Vesting Tentative Subdivision Map. The

**000198**

BOS Resolution

land uses would include 1,147 residential units including single- and multi-family, 45,000 square feet of retail commercial, an 18-hole golf course including 71 guest villas/timeshares, 11.8 acres of public parks, 141.2 acres of designated conservation open space, a wastewater treatment plant and police and fire stations.

L.  On October 7, 2005, the County released an EIR Addendum for the Revised Specific Plan for Rancho San Juan pursuant to the requirements of Section 15164 of the CEQA Guidelines.

M.  On October 19, 2005 the Monterey County Planning Commission held a duly noticed public hearing and recommended that the Board of Supervisors certify the EIR Addendum and approve the proposed General Plan and Area Plan amendments, the Rancho San Juan Revised Specific Plan and proposed amendments to the County's Zoning Ordinance. At least 10 days before the first public hearing date, notice of the hearing before the Planning Commission was published in the Salinas Californian and was also posted on and near the property and mailed to property owners within 300 feet of the subject property.

N.  A specific plan and appropriate environmental analysis pursuant to CEQA have been prepared with full public notice as required by CEQA and the Government Code. On November 7, 2005, the Board of Supervisors held a duly noticed public hearing to consider the EIR Addendum and Revised Specific Plan for Rancho San Juan. All interested members of the public had an opportunity to participate fully in the hearing. By separate resolution, the Planning Commission has recommended that the Board of Supervisors certify the EIR Addendum.

O.  The adoption of the Revised Specific Plan for Rancho San Juan with its revised ADC boundaries will fulfill the requirement that a specific plan be prepared that covers the entire ADC as stated in the Compromise and Settlement Agreement dated October 21, 1994 in Tresch v. County (Monterey County Superior Court Case No. 94349).

P.  On November 7, 2005 the Monterey County Board of Supervisors held a duly noticed public hearing to consider certification of the EIR Addendum, the proposed General Plan and Area Plan amendments, the Rancho San Juan Revised Specific Plan and proposed amendments to the County's Zoning Ordinance. At least 10 days before the first public hearing date, notice of the hearing before the Board of Supervisors was published in the Salinas Californian and Monterey Herald and was also posted on and near the property and mailed to property owners within 300 feet of the subject property.

Q.  The Board of Supervisors considered a revised (as attached to the November 7, 2005 Board of Supervisors staff report) General Plan Consistency Analysis (Appendix C of the Revised Specific Plan) prepared by staff that shows changes

**000199**



to the General Plan Consistency Analysis (Appendix C) contained in the Revised Specific Plan released on September 20, 2005.

## II.   DECISION:

**NOW, THEREFORE, BE IT RESOLVED THAT** the Monterey County Board of Supervisors hereby rescinds the Rancho San Juan Adopted Specific Plan and adopts the Revised Rancho San Juan Specific Plan (GPZ050005), including the revisions shown in the revised Specific Plan shown in Exhibit A and the mitigation measures shown in Exhibit B. Furthermore, the Board authorizes staff to prepare a final version of the Revised Specific Plan that incorporates changes shown in the revised General Plan Consistency Analysis.

**PASSED AND ADOPTED** on this 7th day of November 2005, upon motion of Supervisor Smith , seconded by Supervisor __Armenta__ , by the following vote, to-wit:

AYES: Supervisors Armenta, Calcagno, Lindley, and Smith
NOES: Supervisor Potter
ABSENT: None

I, Lew Bauman, Clerk of the Board of Supervisors of the County of Monterey, State of California, hereby certify the foregoing is a true copy of the original order of said Board of Supervisors duly made and entered in the minutes thereof Minute Book 72 , on November 7, 2005.

Dated: November 18, 2005

Lew Bauman, Clerk of the Board of Supervisors,
County of Monterey, and State of California.

By _____
Cynthia Juarez, Deputy

**000200**

BOS Resolution

**Exhibit H**

1  CHARLES J. McKEE (SBN 152458)
   County Counsel
2  EFREN N. IGLESIA (SBN 071309
   Senior Deputy County Counsel
   County of Monterey
3  168 W. Alisal Street, 3rd Floor
   Salinas, CA 93901-2680
4  Telephone: (831) 755-5045
   Facsimile: (831) 755-5283
5
6  ANDREW W. SCHWARTZ (State Bar No. 87699)
   CATHERINE C. ENGBERG (State Bar No. 220376)
   SHUTE, MIHALY & WEINBERGER LLP
7  396 Hayes Street
   San Francisco, CA 94102
8  Telephone:   (415) 552-7272
   Facsimile:   (415) 552-5816
9
10 Attorneys for Respondent and Defendant
   COUNTY OF MONTEREY
11

**Exempt from filing fee**
**(Gov't Code § 6103)**

# FILED

MAR 13 2006

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
J. NICHOLSON          DEPUTY

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                          COUNTY OF MONTEREY

14  H-Y-H CORPORATION, a Delaware        Case No. M 46616
    corporation,
15                                       **MEMORANDUM OF POINTS AND**
                Petitioner and Plaintiff, **AUTHORITIES IN SUPPORT OF**
16                                       **COUNTY'S MOTION FOR**
        vs.                              **JUDGMENT ON THE PLEADINGS**
17  COUNTY OF MONTEREY, and DOES I
    through XX, INCLUSIVE,
18
                Respondent and Defendant.
19  ─────────────────────────────────   Date:  April 11, 2006
    COUNTY OF MONTEREY,                  Time:  9:00 a.m.
20                                       Dept:  15
            Cross-complainant,
21      vs.                              Date Action Filed: November 10, 1999
22  LANDWATCH MONTEREY COUNTY,
    a nonprofit corporation, RANCHO SAN
23  JUAN OPPOSITION COALITION, and
    ROES I through XX, INCLUSIVE,
24
            Cross-defendants.
25  ─────────────────────────────────
    H-Y-H CORPORATION, a Delaware
26  corporation,
            Real Party in Interest.
27
28
    ───────────────────────────────────────────────────────
    MPA IN SUPPORT OF COUNTY'S MOTION FOR JUDGMENT ON THE
    PLEADINGS
    Case No. M 46616

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................2

    I.    THE JUDGMENT ORDERING THE COUNTY TO ADOPT THE
        RANCHO SAN JUAN SPECIFIC PLAN.................................................2

    II.   THE COUNTY'S FIRST ATTEMPT TO ADOPT A SPECIFIC PLAN
        AND FIRST REFERENDUM...............................................................4

    III.  THE COUNTY'S SECOND ATTEMPT TO ADOPT A SPECIFIC PLAN
        AND SECOND REFERENDUM...........................................................5

    IV.  THE NECESSITY OF A RULING ON THE EFFECT OF THE BALLOT
        MEASURES BEFORE THE ELECTION.................................................6

    V.   SERVICE OF CROSS-COMPLAINT ON LANDWATCH AND RSJOC ............7

ARGUMENT ....................................................................................................7

    I.    THE ELECORATE'S RIGHT TO INITIATIVE AND REFERENDUM IS
        GUARANTEED BY THE CALIFORNIA CONSTITUTION. .......................7

    II.   ON THE OTHER HAND, THE REFRENDUM AND INITIATIVE
        POWER DOES NOT AUTHORIZE VOTERS TO VIOLATE A
        BINDING COURT JUDGMENT. ........................................................9

    III.  DECLARATORY RELIEF SHOULD BE GRANTED TO RESOLVE
        THE CONTROVERSY IN THIS CASE.................................................10

CONCLUSION................................................................................................13

**TABLE OF AUTHORITIES**

**Cases**

*Alameda County Land Use Ass'n v. City of Hayward*
     (1995) 38 Cal.App.4th 1716 ................................................ 10

*Associated Home Builders etc. v. City of Livermore*
     (1976) 18 Cal. 582 ................................................ 8

*Chas. L. Harney v. Contractors' State License Board*
     (1952) 39 Cal.2d 561 ................................................ 10

*City of Burbank v. Burbank-Glendale-Pasadena Airport Authority*
     (2003) 113 Cal.App.4th 465 ................................................ 10, 11

*DeVita v. County of Napa*
     (1995) 9 Cal.4th 763 ................................................ 8, 9

*Duran v. Cassidy*
     (1972) 28 Cal.App.3d 574 ................................................ 8

*Mandel v. Myers*
     (1981) 29 Cal.3d 531 ................................................ 9

*Rossi v. Brown*
     (1995) 9 Cal.4th 688 ................................................ 8

*Voters for Responsible Retirement v. Board of Supervisors*
     (1994) 8 Cal.4th 765 ................................................ 8

**Statutes**

California Code of Civil Procedure
     § 438 ................................................ 7

California Code of Civil Procedure
     § 1060 ................................................ 10, 13

California Code of Civil Procedure
     § 1209 ................................................ 6, 9

California Code of Civil Procedure
     § 1908 ................................................ 9

California Government Code
     § 65858 ................................................ 3

ii

**Constitutional Provisions**

California Constitution
   Article II, § 11.............................................................................. 7

**Other Authorities**

5 Witkin, *Calif. Procedure,*
   Pleading § 818 (4th ed. 1997).................................................... 10

iii

# INTRODUCTION

Respondent and Cross-Complainant County of Monterey ("County") finds itself in an unenviable position warranting declaratory relief.  The County is subject to this Court's February 27, 2001 Judgment ordering the County to "complete . . . the adoption of [a] Specific Plan, and zoning" for Petitioner and Real Party in Interest H-Y-H's property in the Rancho San Juan Area (the "Property").  In compliance with the Judgment, the County adopted a Specific Plan for development of the Property in December 2004; however, Cross-Defendants LandWatch Monterey County ("LandWatch") and Rancho San Juan Opposition Coalition ("RSJOC") sponsored a referendum to effectively repeal that Specific Plan (hereinafter "First Referendum").  That referendum passed overwhelmingly in November 2005.  In a further attempt to comply with this Court's Judgment, in November 2005, the County adopted a significantly scaled-down Revised Specific Plan.  Yet the voters are poised to adopt another referendum (hereinafter "Second Referendum") to effectively repeal the Revised Specific Plan – again.  The Second Referendum – the adoption of which would effectively repeal the Revised Specific Plan – will be placed on the June 2006 ballot.  If the Second Referendum passes, the County will be in violation of the Judgment and potentially in contempt of court.

The Cross-Complaint seeks declaratory relief as to whether the Second Referendum, if adopted, will take precedence over the Court's Judgment, or, alternatively, whether the Court's Judgment is the higher authority and the Second Referendum must yield to it.  The County is neutral as to the legal merits of these opposing arguments; however, the Count seeks timely declaratory relief from the dilemma in which the County has been placed.

There is legal authority on both sides of the issue.  On the one hand, Landwatch and RSJOC will argue that the Second Referendum prevails over the Court's Judgment because the power of referendum is guaranteed by the California Constitution

1

1  and must be "jealously guarded" by the courts.  On the other hand, H-Y-H will contend
2  that the voters are bound by the Court Judgment in the same way as the County Board of
3  Supervisors, and cannot simply reject the Revised Specific Plan without adopting another
4  by initiative.  An actual controversy exists between the parties and must be expeditiously
5  resolved by way of this motion for judgment on the pleadings.

**BACKGROUND**

6
7  **I.    THE JUDGMENT ORDERING THE COUNTY TO ADOPT THE
        RANCHO SAN JUAN SPECIFIC PLAN**
8
9            This action commenced on November 10, 1999 when H-Y-H filed a
10  Petition for Writ of Mandate and Complaint for Declaratory Relief, Constitutional
11  Violations, Inverse Condemnation and Estoppel based on the County's alleged failure to
12  adopt a specific plan in the Rancho San Juan area to allow development of the Property.
13  Cross-Complaint ¶ 14.  In its complaint, H-Y-H sought to compel the County to
14  expeditiously prepare, process, and adopt a specific plan and to certify an environmental
15  impact report ("EIR") for the Property.  *Id.*  H-Y-H also seeks damages allegedly caused
16  by the County's delay in processing the specific plan and EIR.  *Id.*
17            On July 26, 2000, this Court held trial on the first through fourth causes of
18  action for writs of mandate, and the fifth, sixth, and thirteenth causes of action for
19  declaratory relief.  Cross-Complaint ¶ 15.  Responding to a stipulation of the parties, the
20  Court bifurcated the seventh through twelfth causes of actions and the damages portion of
21  the thirteenth cause of action.  *Id.*  (At the last trial setting conference on these bifurcated
22  claims on January 12, 2006, the Court continued the conference to March 30, 2006.  *Id.*)
23            On February 26, 2001, this Court entered Judgment in favor of H-Y-H on
24  seven of its causes of action.  Cross-Complaint ¶ 16, Exh. A.  The Judgment states:
25            A peremptory writ of mandate shall issue from the Court
26            commanding respondent to continue to process the EIR, the
27            Specific Plan and zoning for the Rancho San Juan Area of

2

28  **MPA IN SUPPORT OF COUNTY'S MOTION FOR JUDGMENT ON THE
PLEADINGS**
Case No. M 46616

1    Development Concentration forthwith, consistent with

2    statutory requirements for public notice, and *to diligently*

3    *complete* the certification of said EIR, *the adoption of said*

4    *Specific Plan*, and zoning for the ADC within a reasonable

5    time period in accordance with the law.  Nothing in this writ

6    shall limit or control the discretion legally vested in

7    respondent, shall compel any particular result, nor prevent

8    respondent from specifically finding that the General Plan is

9    inadequate and/or taking appropriate action under

10    Government Code Section 65858.

11    (Emphasis added.)  Cross-Complaint, Exh. A at 1-2.

12        On March 1, 2001, this Court issued a Statement of Decision, which sets

13    forth its findings regarding the length of time the County delayed processing the specific

14    plan and EIR for development of the Property.  Cross-Complaint ¶ 18, Exh. B.  The

15    Statement of Decision concludes that:

16        The delay here is not "short term."  It has been over 14 years.

17        Only a very small part of that delay was attributable to

18        Petitioners.  COUNTY's excuse has generally been lack of

19        money and/or staff.  Although these factors may certainly be

20        considered, they do not end the inquiry where there is a

21        mandatory duty to act.  No other plan has been delayed for this

22        extended period of time. . . . This length of time becomes even

23        more critical where all development is precluded until the

24        action is completed, no definite time for completion of the

25        General Plan update is contemplated, and the projected time

26        period is in the range of multiple years not months.

27

28

3

MPA IN SUPPORT OF COUNTY'S MOTION FOR JUDGMENT ON THE
PLEADINGS
Case No. M 46616

1    Cross-Complaint ¶ 18; Request for Judicial Notice in Support of County's Motion for

2    Judgment on the Pleading ("RJN"), Exh. 1 at 6 (emphasis in original).

3          To avoid liability for H-Y-H's damages based on this Court's finding of

4    unreasonable delay, the County engaged in a mediation with H-Y-H presided over by the

5    Honorable Nat A. Agliano, Presiding Justice of the Court of Appeal (ret.).   Cross-

6    Complaint ¶ 19.  On September 9, 2002, Justice Agliano issued a Report of Mediator to

7    Presiding Judge. *Id.*, Exh. C.  Attached to the Report is the Stipulation Following Report

8    of Mediator to Presiding Judge ("the Stipulation"), which was filed on September 10,

9    2002. *Id.*, Exh. C.

10          Under the Stipulation, and to avoid a potentially large damage judgment,

11    the County agreed to continue to expeditiously process the Rancho San Juan Specific

12    Plan and EIR and concurrently process for approval a development project on the

13    Property in accordance with the August 21, 2002 "Conceptual Plan" prepared for the

14    Property and attached to the Stipulation in reduced form.  Cross-Complaint ¶ 20, Exh. C

15    (Stipulation) at 2.  The County and H-Y-H agreed that the Conceptual Plan meets

16    H-Y-H's minimum land use and density requirements for the development of the

17    Property, and that it would be the preferred alternative of the EIR for the Property. *Id.*

18    H-Y-H agreed to refrain from requesting resetting of the trial on the damage claims so

19    long as the County exercises its good faith efforts to expeditiously process the completion

20    of the Specific Plan, EIR, and development applications under this Court's judgment and

21    the Stipulation. *Id.*

22    **II.    THE COUNTY'S FIRST ATTEMPT TO ADOPT A SPECIFIC PLAN AND**

23          **FIRST REFERENDUM**

24          To comply with the Court's Judgment, on December 14, 2004, the County

25    adopted the Rancho San Juan Specific Plan, General Plan amendments, and zoning and

26    subdivision ordinance amendments, and certified a programmatic EIR for the Specific

27

28

1    Plan. RJN, Exhs. 2-6. The Specific Plan provided for development of approximately

2    2,600 acres, including the entire Rancho San Juan ADC. RJN, Exh. 2 at 1.

3              Following the December 14, 2004 approvals, Cross-Defendants LandWatch

4    and RSJOC sponsored the First Referendum to repeal the General Plan amendments

5    adopted on December 14, 2004. Cross-Complaint ¶ 22. On November 8, 2005, the

6    voters of Monterey County approved the First Referendum (Measure C) by a vote of

7    75.65 percent to 24.35 percent, thus repealing the General Plan amendments for the

8    adopted Rancho San Juan Specific Plan and effectively repealing the Specific Plan. RJN,

9    Exh. 7 at 5-6.

10

11   **III.   THE COUNTY'S SECOND ATTEMPT TO ADOPT A SPECIFIC PLAN
           AND SECOND REFERENDUM**

12             In response to the First Referendum and previous Board direction to

13   consider a modified plan, on November 7, 2005, the County adopted the Revised Rancho

14   San Juan Specific Plan, General Plan amendments, and zoning amendments, and certified

15   an addendum to the programmatic EIR. RJN, Exhs. 8-11. The Revised Rancho San Juan

16   Specific Plan is substantially scaled down from the Plan adopted on December 14, 2004.

17   RJN, Exh. 8 at 3. For example, the Revised Specific Plan provides for development of

18   H-Y-H's Property only, a 671-acre area equal to one-fourth the size of the Plan adopted

19   on December 14, 2004. RJN, Exh. 8 at 3; Cross-Complaint ¶ 23. The County's adoption

20   of the Revised Plan complied with the Judgment and the terms of the Stipulation. Cross-

21   Complaint ¶ 23.

22             Following the November 7, 2005 approvals, LandWatch and RSJOC

23   sponsored the Second Referendum against Board Resolution No. 05-305, which seeks to

24   effectively repeal the much smaller development approval of the Revised Specific Plan

25   contained in the General Plan amendments adopted on November 7, 2005. Cross-

26   Complaint ¶ 24, Exh. D. Resolution No. 05-305 amends the Monterey County General

27   Plan and was adopted on November 7, 2005 concurrently with the Revised Rancho San

28                                            5

1  Juan Specific Plan. RJN, Exhs. 8, 9.  On January 24, 2006, the County of Monterey

2  Board of Supervisors certified this Second Referendum for the June 6, 2006 ballot.

3  Cross-Complaint ¶ 24; RJN, Exh. 12.

4          Further complicating matters for the County, on October 19, 2005,

5  LandWatch submitted its Notice of Intent to Circulate an initiative measure entitled "The

6  Monterey County Quality of Life, Affordable Housing and Voter Control Initiative"

7  (hereinafter referred to as "Initiative").  Cross-Complaint ¶ 24, Exh. E.  Like the Second

8  Referendum, the Initiative would also effectively repeal the Revised Specific Plan.

9  Cross-Complaint ¶ 24.  On February 28, 2006, the County Board of Supervisors voted

10  against placing the Initiative on the ballot.  The County anticipates that LandWatch will

11  soon initiate a lawsuit challenging the Board's February 28 action.[1]

12  **IV.    THE NECESSITY OF A RULING ON THE EFFECT OF THE BALLOT**
13  **       MEASURES BEFORE THE ELECTION**

14          To comply with the Court's Judgment, the County must adopt a Specific

15  Plan for the Rancho San Juan area.  *See* Cross-Complaint, Exh. A.  On June 6, 2006 it is

16  likely that the County will be in violation of the Judgment due to the passage of the

17  Second Referendum.  Cross-Complaint ¶¶ 24, 26.  At that time, H-Y-H may immediately

18  file contempt proceedings against the County.  *See* Code Civ. Proc. § 1209(a)(5).  In

19  addition, the County anticipates that if the Second Referendum passes, H-Y-H will seek a

20  trial date for the damages trial.  Cross-Complaint ¶ 25.  The County therefore seeks this

21  Court's guidance, prior to the June 6, 2006 election, regarding whether the Second

22  Referendum, if adopted will take precedence over the Court's Judgment, or, alternatively,

23

24

25  [1] This Motion requests that the Court determine whether the Second Referendum
    or the Court's Judgment prevails.  If, as a result of litigation, the Initiative is placed on
26  the ballot, the County will request at the appropriate time that the Court include
    consideration of the Initiative in this Motion as well.

27

28

MPA IN SUPPORT OF COUNTY'S MOTION FOR JUDGMENT ON THE
PLEADINGS
Case No. M 46616

1  whether the Court's Judgment is the higher authority and the Second Referendum must

2  yield to it.  Cross-Complaint at 9 (Prayer for Relief).

3

4  **V.     SERVICE OF CROSS-COMPLAINT ON LANDWATCH AND RSJOC**

5          On February 17, 2006, this Court granted the County leave to file the

6  instant Cross-Complaint for Declaratory Relief.  On March 7, 2006, the County served

7  the Cross-Complaint on LandWatch, RSJOC.  On March 7, 2006, the County served the

8  Cross-Complaint on Petitioner and Real Party in Interest H-Y-H.  The parties stipulated

9  to a briefing and hearing schedule resulting in the hearing on the motion on April 11,

10  2006.  Stipulation re Briefing and Hearing Schedule for County's Motion for Judgment

11  on the Pleadings; Order filed March 7, 2006.  The parties stipulated that the County may

12  file the instant motion for judgment on the pleadings prior to the time provided under

13  Code of Civil Procedure section 438(f).  *See* Stipulation.

14                          **ARGUMENT**

15          The County prays for a declaration as to whether the Second Referendum,

16  if passed, will relieve the County of its obligation under this Court's Judgment to adopt a

17  Specific Plan, or whether the Judgment takes precedence over the Second Referendum,

18  such that the Referendum cannot prevail over the Judgment of this Court.  Cross-

19  Complaint at 9 (Prayer for Relief).  As set forth below, there is legal authority on both

20  sides of the issue.

21  **I.     THE ELECORATE'S RIGHT TO INITIATIVE AND REFERENDUM IS**
22          **GUARANTEED BY THE CALIFORNIA CONSTITUTION.**

23          A substantial body of case law supports Cross-Defendants' position that the

24  Second Referendum and Initiative would, if passed by the voters on June 6, 2006, have

25  the effect of rescinding the County's November 7, 2005 adoption of the Revised Rancho

26  San Juan Specific Plan, despite the Court's Judgment.  The local electorate's right to

27  initiative and referendum is guaranteed by the California Constitution, article II, section

28                                    7

1   11. *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775 (general plans may be amended

2   by initiative).

3            The California Supreme Court has often reiterated its longstanding

4   directive that the judiciary must jealously guard and protect this power:

5            The initiative and referendum are not rights 'granted [tc] the

6            people, but . . . powers reserved by them.  Declaring it the

7            duty of the courts to jealously guard this right of the people,

8            the courts have described the initiative and referendum as

9            articulating one of the most precious rights of our democratic

10           process.  [I]t has long been our judicial policy to apply a

11           liberal construction to this power wherever it is challenged in

12           order that the right not be improperly annulled.  If doubts can

13           reasonably be resolved in favor of the use of this reserve

14           power, courts will preserve it.'

15  *Rossi v. Brown* (1995) 9 Cal.4th 688, 695 (quoting *Associated Home Builders etc. v. City*

16  *of Livermore* (1976) 18 Cal. 582, 591.  In addition, courts generally "presume, absent a

17  clear showing of the Legislature's intent to the contrary, that legislative decisions of a

18  city council or board of supervisors . . . are subject to initiative and referendum." *Voters*

19  *for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 777.

20           Here, the County recognized that the duty to place a duly qualified

21  referendum on the ballot is ministerial.  *See Duran v. Cassidy* (1972) 28 Cal.App.3d 574.

22  The Second Referendum was certified by the Registrar of Voters as having been signed

23  by the requisite number of voters as required by the Elections Code.  RJN, Exh. 12.  The

24  County therefore ordered the Second Referendum to be placed on the June 6, 2006 ballot.

25  *Id.*

26           Based on the case authority upholding the power of initiative and

27  referendum, the Second Referendum, if passed, may relieve the County of its obligation

28

8

MPA IN SUPPORT OF COUNTY'S MOTION FOR JUDGMENT ON THE
PLEADINGS
Case No. M 46616

1  under this Court's Judgment to adopt a Rancho San Juan Specific Plan.  The County

2  seeks a judicial declaration of whether the initiative and referendum power extends to

3  these circumstances.

4  **II.    ON THE OTHER HAND, THE REFRENDUM AND INITIATIVE POWER DOES NOT AUTHORIZE VOTERS TO VIOLATE A BINDING COURT JUDGMENT.**

5

6          The County is obligated under this Court's Judgment to "continue to

7  process the EIR, Specific Plan and zoning for the Rancho San Juan Area of Development

8  concentration forthwith . . . and to diligently complete . . . the adoption of said Specific

9  Plan, and zoning for the ADC within a reasonable time period in accordance with law."

10  Cross-Complaint, Exh. A, at 1-2.  Similarly, the 2002 Stipulation commits the County to

11  "expeditiously process the Specific Plan and EIR for the Rancho San Juan Area of

12  Development Concentration ("Specific Plan"), and in particular the August 21, 2002

13  'Conceptual Plan' prepared for the HYH property by the consultant for the County,

14  Project Design Consultants."  Cross-Complaint, Exh. C (Stipulation) at 2.

15          Under the separation of powers principles embodied in Article III of the

16  California Constitution, the County does not have the power to ignore or reconsider the

17  Court's Judgment.  *See Mandel v. Myers* (1981) 29 Cal.3d 531, 547.  Instead, the County

18  is bound by that judgment and any violation of the Judgment would be grounds for civil

19  contempt proceedings brought by H-Y-H.  *See* Code Civil Proc. §§ 1908 (judgments

20  conclusive and binding); 1209 (violation of judgment basis for contempt of court).

21          Despite the judicial deference in favor of initiatives and referenda, the

22  electorate's power of referendum and initiative "is generally co-extensive with the

23  legislative power of the local governing body."  *DeVita*, 9 Cal.4th 763, 775.  Because the

24  County's governing body, the Board of Supervisors, is bound by the Court's Judgment

25  requiring the adoption of a Rancho San Juan Specific Plan, the electorate is also bound by

26  the Judgment.  Because the voters step into the shoes of the Board of Supervisors,

27  arguably they cannot rescind the actions necessary to achieve compliance with the

28

9

1 │ Judgment.  Under H-Y-H's theory, the voters would need to propose a different Rancho

2 │ San Juan Specific Plan by initiative if it were to reject the Revised Plan pursuant to the

3 │ Second Referendums.  The voters have not done so.  The County seeks a judicial

4 │ declaration of whether the Court's Judgment limits the initiative and referendum power

5 │ under these circumstances.

6 │ **III.   DECLARATORY RELIEF SHOULD BE GRANTED TO RESOLVE THE CONTROVERSY IN THIS CASE.**

7 │ Code of Civil Procedure section 1060 states, in relevant part:

8 │ Any person . . . who desires a declaration of his or her rights

9 │ or duties with respect to another . . . may, in cases of actual

10 │ controversy relating to the legal rights and duties of the

11 │ respective parties, bring an original action or cross-complaint

12 │ in the superior court for a declaration of his or her rights and

13 │ duties . . . .

14 │ The County, a local agency, is considered a "person" for purposes of this section.  *City of*

15 │ *Burbank v. Burbank-Glendale-Pasadena Airport Authority* (2003) 113 Cal.App.4th 465,

16 │ 480.

17 │ An "action for declaratory relief" exists where "the parties are in

18 │ fundamental disagreement over the construction of particular legislation, or they dispute

19 │ whether a public entity has engaged in conduct or established policies in violation of

20 │ applicable law."  *Alameda County Land Use Ass'n v. City of Hayward* (1995) 38

21 │ Cal.App.4th 1716, 1723 (coalition of groups challenged MOU between Alameda and

22 │ Hayward).  Even a probable future controversy suffices.  *Chas. L. Harney v. Contractors'*

23 │ *State License Board* (1952) 39 Cal.2d 561, 564 (actual controversy stated when

24 │ contractor challenged validity of regulation requiring licenses for certain work without

25 │ having alleged that he bid on or intended to bid on any particular job); 5 Witkin, *Calif.*

26 │ *Procedure*, Pleading § 818 (4th ed. 1997).

27 │

28 │

10

1    Here, an actual controversy exists between the parties as to the effect of the

2    Second Referendum set to appear on the June 2006 ballot. The parties are in fundamental

3    disagreement over whether the Second Referendum can take precedence over this Court's

4    Judgment directing the County to adopt a Specific Plan for the Rancho San Juan area.

5    *See* Cross-Complaint ¶¶ 2, 24, Exh. A at 1-2. LandWatch and RSJOC contend that the

6    passage of the Second Referendum will effectively repeal the Revised Specific Plan,

7    nullifying the Court's Judgment. Cross-Complaint ¶¶ 2, 24, Exh. A at 1-2. H-Y-H

8    contends that the referendum and initiative power does not authorize voters to violate a

9    binding court judgment. The County faces potential civil contempt proceedings by

10    H-Y-H if the Second Referendum passes in June. *Id.* ¶¶ 3, 26. Further, H-Y-H has

11    informed the County that if the Revised Specific Plan is repealed pursuant to the Second

12    Referendum, it will revive its suit against the County for damages in excess of $200

13    million. *Id.* ¶ 25.

14    The fact that the County is neutral as to the outcome of the declaratory

15    relief action does not undercut the existence of a controversy. A similar situation arose in

16    *City of Burbank v. Burbank-Glendale-Pasadena Airport Authority*. In that case, the City

17    of Burbank brought an action for declaratory relief to ascertain the validity of an initiative

18    (Measure A) that restricted development at Burbank-Glendale-Pasadena Airport. 113

19    Cal.App.4th at 467-68. The Airport Authority, which opposed the initiative, was named

20    as a defendant. The initiative proponents argued that there was no actual controversy

21    because the City's and the Authority's interests were not antagonistic. *Id.* at 480-81. The

22    Court of Appeal rejected the argument, noting that the predicament in which the City

23    found itself constituted an actual controversy subject to declaratory relief. The Court

24    stated:

25    [T]he trial court correctly found an actual controversy existed.

26    If Burbank enforced Measure A's provisions by refusing to

27    issue permits and give its consent to proposed airport projects

28

11

1     until the Airport Authority proved it had complied with all the

2     preconditions in Measure A, the Airport Authority would

3     have brought suit against Burbank. . . . On the other hand, if

4     Burbank refused to implement Measure A without first

5     receiving a judicial ruling on the measure's validity,

6     proponents of the measure would likely have sued the City of

7     Burbank had the city not brought its own suit as quickly as it

8     did.

9  *Id.* at 481. The County here finds itself in a virtually identical predicament as the City of

10  Burbank. If the County rescinds the Revised Specific Plan in accordance with the

11  Second Referendum, it will be in violation of this Court's Judgment and will be sued by

12  H-Y-H for contempt of court and massive damages. On the other hand, if it refuses to

13  implement the Second Referendum on the grounds that it violates the Court's Judgment,

14  the County will likely be sued by the initiative proponents to enforce the Second

15  Referendum. Thus, an actual controversy exists and a declaration by this Court is

16  necessary.

17       LandWatch and RSJOC may argue that it is premature to bring this

18  declaratory relief action because the election has not yet happened and the measures may

19  not pass. However, given that the First Referendum on the Specific Plan passed by a

20  margin of 75.65 percent to 24.35 percent, it is likely the Second Referendum will pass.

21  *See* Cross-Complaint ¶ 24; RJN, Exh. 7 at 5-6. After passage, the County would be in

22  immediate violation of this Court's Judgment and subject to contempt proceedings by

23  H-Y-H. Cross-Complaint ¶¶ 3, 26. Further, if this Court finds that the Second

24  Referendum cannot override a valid court judgment, then a declaration at this stage could

25  save LandWatch and RSJOC significant resources that would otherwise be spent on

26

27

28

12

1  promoting the measures.  Thus, it is important to know now, rather than after the election,

2  what the effect of the Second Referendum will be on this litigation.[2]

3                                          **CONCLUSION**

4             The County of Monterey respectfully requests that the Court grant

5  declaratory relief in this action.

6

7  Dated:  March 7, 2006                    SHUTE, MIHALY & WEINBERGER LLP

8

9                                           By: _____
                                                ANDREW W. SCHWARTZ
10

11                                          Attorneys for Respondent and Defendant
                                            COUNTY OF MONTEREY
12

13

14  P:\MONTEREY\MAT 5\RSJ2\cce029a (ps and as iso mjop).doc

15

16

17

18

19

20

21

22

23

24

25  _____
           [2] Moreover, Code of Civil Procedure section 1060 specifically provides that a
26  "declaration may be had before there has been any breach of the obligation in respect to
    which said declaration is sought."

27                                              13

28  MPA IN SUPPORT OF COUNTY'S MOTION FOR JUDGMENT ON THE
    PLEADINGS
    Case No. M 46616

**Exhibit I**

# SHUTE, MIHALY & WEINBERGER LLP
### ATTORNEYS AT LAW

E. CLEMENT SHUTE, JR. *
MARK I. WEINBERGER (1948-2005)
FRAN M. LAYTON
RACHEL B. HOOPER
ELLEN J. GARBER
TAMARA S. GALANTER
ELLISON FOLK
RICHARD S. TAYLOR
WILLIAM J. WHITE
ROBERT S. PERLMUTTER
OSA L. WOLFF
JANETTE E. SCHUE
MATTHEW D. ZINN
CATHERINE C. ENGBERG
AMY J. BRICKER
JENNY K. HARBINE

*SENIOR COUNSEL

396 HAYES STREET
SAN FRANCISCO, CALIFORNIA 94102
TELEPHONE: (415) 552-7272
FACSIMILE: (415) 552-5816
WWW.SMWLAW.COM

MADELINE O. STONE
GABRIEL M.B. ROSS
DEBORAH L. KEETH
WINTER KING
KEVIN P. BUNDY
ANDREA RUIZ-ESQUIDE
SHERIDAN J. PAUKER

LAUREL L. IMPETT, AICP
CARMEN J. BORG, AICP
URBAN PLANNERS

DAVID NAWI
ANDREW W. SCHWARTZ
OF COUNSEL

April 10, 2006

**By Federal Express**
Clerk of the Court
Monterey County Superior Court
1200 Aguajito Road
Monterey, California 93940

     Re:    <u>H-Y-H Corporation vs. County of Monterey</u>
           Monterey County Superior Court No. M46616

Dear Sir/Madam:

     The County of Monterey's Motion for Judgment on the Pleadings in the above-titled case is currently calendared for April 17, 2006 at 9:00 a.m. in Department 15. Because the County of Monterey has recently taken the referendum at issue in the case off the June 2006 ballot, the County requests that its motion be taken off the Court's calendar. All parties have agreed that the motion should be taken off calendar at this time. If the referendum is restored to the ballot at a later date, the County will re-notice the hearing at that time.

                    Very truly yours,

                    SHUTE, MIHALY & WEINBERGER LLP

                    Catherine C. Engberg

cc:    Department 15, attn: Erica (by facsimile)
       See attached Proof of Service

[P:\MONTEREY\MAT 5\RSJ2\cce043 (letter re mjop off calendar).wpd]