1  OFFICE OF THE MONTEREY COUNTY COUNSEL
   CHARLES J. MCKEE (SBN 152458), COUNTY COUNSEL
2  LEROY W. BLANKENSHIP (SBN 065233), ASSISTANT COUNTY COUNSEL
   EFREN N. IGLESIA (SBN 71309), SENIOR DEPUTY COUNTY COUNSEL
3  168 W. ALISAL, 3RD FLOOR
   SALINAS, CA  93901-2680
4  Telephone:  (831) 755-5045
   Facsimile:  (831) 755-5283
5
   NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
6  STEPHEN N. ROBERTS (SBN 062538)
   50 CALIFORNIA STREET, 34TH FLOOR
7  SAN FRANCISCO, CALIFORNIA 94111-4799
   Telephone: (415) 398-3600
8  Facsimile: (415) 398-2438
   Email: montereycase@nossaman.com
9
   NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
10 JOHN J. FLYNN III (SBN 076419)
   18101 VON KARMAN AVENUE
11 IRVINE, CA  92612-0177
   Telephone: (949) 833-7800
12 Facsimile: (949) 833-7878
   Email: montereycase@nossaman.com
13
   Attorneys for Defendants/Respondents
14 BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY;
   TONY ANCHUNDO, IN HIS CAPACITY AS MONTEREY COUNTY
15 REGISTRAR OF VOTERS; AND THE COUNTY OF MONTEREY

16                UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18                    SAN JOSE DIVISION

| | |
|---|---|
| RANCHO SAN JUAN OPPOSITION COALITION; CITIZENS FOR RESPONSIBLE GROWTH; and JULIE ENGELL, <br><br> Plaintiffs, <br><br> vs. <br><br> BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY; TONY ANCHUNDO, in his capacity as Monterey County Registrar of Voters; COUNTY OF MONTEREY; and DOES 1 through 10, inclusive, <br><br> Defendants. <br><br> OTHER CAPTION ON NEXT PAGE | Case Nos.:  C 06-2369 JW <br> C 06-02202 JW <br> (Related Cases) <br><br> **COUNTY DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date: December 11, 2006 <br> Time: 9:00 a.m. <br> Judge: Hon. James Ware <br> Courtroom: 8 |

| | |
|---|---|
| 1 | SABRAS RANGEL and MARIA BUELL, ) |
| 2 |        Plaintiffs, ) |
| 3 | vs. ) |
| 4 | COUNTY OF MONTEREY, a governmental ) |
| 5 | corporation formed under the laws of the State of ) California; THE BOARD OF SUPERVISORS OF ) THE COUNTY OF MONTEREY; and ANTHONY ) |
| 6 | ANCHUNDO, in his official capacity as the ) Registrar of Voters for the County of Monterey, ) |
| 7 |        Defendants. ) |

208701_1.DOC                                   Case Nos.:  C 06-2369 JW and C 06-02202 JW

COUNTY DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**(Page)**

I. INTRODUCTORY STATEMENT ...................................................................................1

II. FACTS NECESSARY FOR SUMMARY JUDGMENT.................................................2

    A. History Of The Underlying Project And Relationship To The Referendum.......................................................................................................2

    B. FVRA Litigation. ...................................................................................................4

III. THE COUNTY'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED ........................................................................................................................5

    A. Section 203 Of The FVRA Must Be Broadly Construed To Require Translation Of A Referendum Petition Into Spanish In Monterey County. ..........5

    B. The Effect Of The *En Banc* Panel's Decision In *Padilla v. Lever*. ......................6

    C. The Referendum Petition And Associated Forms Are "Provided" By The State Or Its Subdivision. .......................................................................................7

    D. Referendum Petitions, Forms And Associated Documents Constitute "Materials Or Information Relating To The Electoral Process."........................10

    E. The Legislative History Of Section 203 Supports These Conclusions................11

    F. Deference Should be Accorded to the United States Attorney General's Interpretation of Section 203. ..............................................................................12

IV. CONCLUSION................................................................................................................13

# TABLE OF AUTHORITIES

**(Page)**

**Cases**

*Allen v. State Bd. Of Elections*
393 U.S. 544 (1969) ..................................................................................................5

*Billig v. Voges*
223 Cal.App.3d 962 (1990) ......................................................................................10

Cf. *Pleasant Grove v. United States*
479 U.S. 462 (1987) ..................................................................................................12

*Delgado v. Smith*
861 F.2d 1489 (11th Cir. 1988) ............................................................................10, 12

*Dougherty County Board of Education v. White*
39 U.S. 32 (1978) ......................................................................................................12

*In re Monterey County Initiative Matter*
San Jose District Court, Case No. C 06-01407 JW .............................................1, 4, 12

*Lopez v. Monterey County*
525 U.S. 266 (1999) ..................................................................................................10

*Montero v. Meyer*
861 F.2d 603 (10th Cir. 1988) ..............................................................................11, 12

*Myers v. Patterson*
196 Cal.App.3d 130 (1987) ........................................................................................9

*Padilla v. Lever*
429 F.3d 910 (9th Cir. 2005) ......................................................................................1

*Padilla v. Lever*
463 F.3d 1046 (9th Cir. 2006) ..........................................................................1, 4, 6, 9

*United States v. Daas*
198 F.3d 1167 (9th Cir. 1999) ..................................................................................10

*United States v. Sheffield Bd. Of Comm'rs*
435 U.S. 110 (1978) ..................................................................................................12

*White v. E-Loan, Inc.*
409 F.Supp.2d 1183 (N.D. Cal. 2006) ......................................................................10

*Zaldivar v. City of Los Angeles*
780 F.2d 823 (9th Cir. 1986) ................................................................................8, 11

## TABLE OF AUTHORITIES (cont'd)

**(Page)**

**Statutes**

28 C.F.R. § 51.22 ..................................................................................................... 14

28 C.F.R. § 55, App. (2005) ....................................................................................... 5

28 C.F.R. § 55.15 ................................................................................................. 6, 15

28 C.F.R. § 55.19 ............................................................................................... 12, 14

42 U.S.C. § 1973aa-1a(c) ................................................................................. passim

Cal. Elec. Code § 9020 .............................................................................................. 9

Cal. Elec. Code § 9101 .............................................................................................. 9

Cal. Elec. Code § 9113 .............................................................................................. 9

Cal. Elec. Code § 9115 .............................................................................................. 9

Cal. Elec. Code § 9140 .............................................................................................. 8

Cal. Elec. Code § 9141 ........................................................................................... 8, 9

Cal. Elec. Code § 9144 ....................................................................................... 8, 9, 14

Cal. Elec. Code § 9146 ........................................................................................... 8, 9

Cal. Elec. Code § 9147 ........................................................................................... 9, 11

Cal. Elec. Code § 9160 ............................................................................................ 10

Pub. Res. Code 21000, *et seq.* ................................................................................... 3

**Other Authorities**

*Merriam Webster's Collegiate Dictionary*, (10th ed. 1996) .................................... 10

Sen. Rep. No. 94-295 (1975) .................................................................................... 11

## I. INTRODUCTORY STATEMENT

As was true in the prior case before this Court, *In re Monterey County Initiative Matter*, No. C 06-01407 JW (N.D. Cal. 2006), the Monterey County Board of Supervisors (the "Board") has a Hobson's Choice between the demands of both sets of plaintiffs in these related cases: Sabas Rangel and Maria Buell (collectively "Rangel") sue the Board for violating § 203 of the Federal Voting Rights Act of 1964 (42 U.S.C. § 1973aa-1a(c)) as amended ("FVRA"), by allowing the Referendum petition at issue here ("Petition") to be placed on the ballot despite being circulated in English only; and Rancho San Juan Opposition Coalition ("RSJOC"), Citizens for Responsible Government, and Julie Engell (collectively "RSJOC," unless otherwise specified) sue the Board for having removed the same Petition from the ballot after the Board determined that its circulation violated FVRA.

When the Board concluded that the Petition violated FVRA, and removed it from the June 2006 ballot, it followed the plain language of FVRA, the regulations promulgated thereunder by the Department of Justice ("DOJ"), the then applicable Ninth Circuit's decision relating to petitions in *Padilla v. Lever*, 429 F.3d 910 (9th Cir. 2005) ("*Padilla*"), and the decision of this Court in the *In re Monterey County Initiative Matter*, which held that initiative petitions were subject to FVRA. In doing so, it was motivated by a concern that the rights of the Spanish-speaking residents of Monterey County were being harmed by the petition proponents, a fact highlighted for the Board not only by those court decisions but also Rangel's filing of one of the instant lawsuits.

With respect to petitions such as recall or referendum, § 203 of FVRA raises two basic questions: (i) whether the petition constitutes materials or information relating to the electoral process under § 203 and (ii) whether the petition is of the type of material or information provided by the State or a political subdivision. *Padilla v. Lever*, 463 F.3d 1046, 1048 (9th Cir. 2006) (*en banc*). As will be demonstrated clearly in this brief, the referendum procedure in California falls squarely within both of these tests, such that § 203 does apply to the circulation of referendum petitions.

This Court previously denied a motion for preliminary injunction, awaiting the 9th Circuit's disposition of its *en banc* reconsideration of *Padilla*. The *en banc* panel has now issued its *en banc* decision. *Id.*. That panel held that <u>recall</u> elections are not subject to FVRA, changing the result from the initial *Padilla* decision. Although it could have addressed other types of petitions such as initiatives and

referenda, the *en banc* panel did not reach any decision as to these other types of election procedure. Nevertheless, the court's reasoning with respect to why it did not find recall petitions subject to FVRA is helpful, and leads to the conclusion that referendum petitions, in contrast, are subject to it.

## II. FACTS NECESSARY FOR SUMMARY JUDGMENT

This being a summary judgment motion, it is necessary to determine that there are no factual issues in dispute. In this case that is simple, because there is only one factual question: whether the Petition was circulated in English only, or instead in English and Spanish. There is no dispute. The Parties stipulated in the Joint Case Management Statement and Proposed Order, filed October 13, 2006, that such was the case. Req. Jud. Not., Ex. A, p. 1 ["Petitions for the Referendum Against Resolution No. 05-305 were circulated to voters of Monterey County only in English."].

### A. History Of The Underlying Project And Relationship To The Referendum.

Some background facts are helpful for context, however. The County of Monterey (the "County") and the Board have been involved for years in litigation with on the one hand developer HYH, and, on the other hand, citizen groups opposed to development in the Rancho San Juan area, such as Landwatch Monterey County ("Landwatch") and RSJOC, one of the plaintiffs here. *See Declaration of Alana Knaster in Opposition to Motion for Preliminary Injunction* ("Knaster Dec."), ¶ 3.[1] In the first such piece of litigation HYH sued the County on, among other things, constitutional "takings" grounds. Landwatch and RSJOC have also sued the County in two lawsuits for a Writ of Mandate in the Superior Court, on numerous grounds related to the same project, including but not limited to alleged violations of the California Environmental Quality Act ("CEQA"), Pub. Res. Code 21000, *et seq.* HYH is the real party in interest in that litigation. *Knaster Dec.*, ¶ 5, Exs. D, E.

After a trial of HYH's original action, the Superior Court of Monterey ordered the County, on February 26, 2001, to adopt a specific plan, an EIR, and zoning for the Rancho San Juan Area of Development Concentration. Although the Court's Order did not specifically require the County to

---

[1] Since these facts are by way of background, we have referred to the evidence previously submitted in connection with the motion for preliminary injunction, without burdening the court record with additional documents.

approve HYH's project, such zoning and plan changes were necessary prerequisites to permitting HYH to develop the property it owned in that area. *Id.* at ¶ 4, Exs. B, C.

Pursuant to a stipulation with HYH reached after mediation, in order to avoid years of further litigation with HYH over its right to proceed with the Butterfly Village project, the County agreed not only to process the plan and zoning changes expeditiously to comply with the court's judgment, but also to process the Project concurrently. Shortly thereafter the County became defendants in no less than five additional lawsuits concerning the development, including the above-referenced CEQA action by Landwatch and RSJOC, currently pending in Monterey County Superior Court. *Id.* at ¶ 5, Exs. D, E.

On December 14, 2004 the County adopted certain amendments to the General Plan, and adopted a Specific plan and zoning which would have placed it in compliance with the state court's order and judgment, and which provided for approximately 2,600 acres of development in the Rancho San Juan area. Shortly thereafter Landwatch and RSJOC sponsored a referendum to defeat the amendments to the General Plan, which passed in the November 2005 election. *Id.* at ¶ 6. The passage of that referendum thereby repealed the amendments effected by the County to place it in compliance with the state court's order.

In light of that repeal, and in order to try to place itself in compliance with the state court's order and to avoid a potentially huge damages claim against the County by HYH, the Board of Supervisors (the "Board") again attempted to amend the relevant General plan provisions, this time in a much more scaled-down manner. *Id.* at ¶ 7. On November 7, 2005, the Board passed Resolution No. 05-305 (the "Resolution") adopting revised amendments to the general and area plans for the Rancho San Juan area. *Id.*, Exs. F, G. The revised development would now amount to approximately 671 acres. *Id.* This is probably the minimum necessary for the County to comply with the 2001 state court order and avoid damages claims from HYH.

Shortly thereafter, RSJOC sponsored the referendum at issue in this case (the "Referendum") to repeal the Resolution, and this Referendum qualified for the June 2006 ballot. It was ordered placed on that ballot by the Board on January 24, 2006. *Id.* at ¶ 8. It can be seen from the context, that the matter before the voters is not a simple one. As opposed to a recall petition, where the matter at hand might be explained to a limited English voter, there is no way that a complex petition as this could be understood

by that individual without translation.

### B. FVRA Litigation.

In the meantime events occurred which caused the Board to reconsider its decision to put the Referendum on the ballot. The application of the FVRA to initiative and referendum petition circulation had been raised by two lawsuits filed against the County. *See* Declaration of Leroy Blankenship in Opposition to Motion for Preliminary Injunction ("Blankenship Dec."), ¶¶ 4, 5. The first of those actions was the *In re Monterey County Initiative Matter*, wherein plaintiffs Rosario Madrigal, along with plaintiffs herein Rangel and Buell, sued the County for allowing an initiative petition to be placed on the ballot after it had been circulated in English only. Blankenship Dec., ¶ 4. On March 23, 2006, this Court ruled that the initiative petition had indeed violated the FVRA. *Id.* Additionally, on March 27, 2006, in one of the cases now related herein, Rangel sued the County for allowing the referendum Petition on the same ballot, because this Petition had similarly been circulated only in English. *Id.* at ¶ 5. In light of the controlling law, including this Court's ruling in the prior matter, the County concluded that it ran the risk of being held in violation of the FVRA with respect to the referendum Petition as well. Accordingly, on March 28, 2006, the Board ordered the Petition removed from the ballot. Blankenship Dec., ¶ 6. On April 3, 2006, RSJOC sued the County in state court in the *RSJOC* case, which lawsuit the County subsequently removed to this Court on April 4, 2006, and which was subsequently ordered related by this Court to the *Rangel* case. *Id.* at ¶ 7.

On August 15, 2006, this Court denied the RSJOC plaintiffs' motion for a preliminary injunction, pending the out come of the *Padilla en banc* panel decision. That decision was issued on September 19, 2006. *Padilla v. Lever*, 463 F.3d 1046 (9th Cir. 2006) (*en banc*).

Passage of the Petition repealing the Resolution, and hence the changes to the amendments to the general and area plans, would potentially place the County again in violation of the state court order mandating the adoption of a specific plan that will permit the development in the Rancho San Juan area, and possibly in contempt of the state court. Accordingly, on March 13, 2006, the County had moved in the state court action with HYH, in the form of a Motion for Judgment on the Pleadings, for declaratory relief as to whether the Referendum, if it passed, would take precedence over the state court order, or whether the state court order is the higher authority and the Referendum must yield to it. *Knaster Dec.*,

¶ 9 Ex. H. After the Board removed the Referendum from the June ballot on March 28, 2006, the County and HYH stipulated to stay that declaratory relief proceeding until the validity of the Referendum was determined, resolution of the declaratory relief issue no longer being immediately necessary. *Id.* at ¶ 9, Ex. I.

## III. THE COUNTY'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED

### A. Section 203 Of The FVRA Must Be Broadly Construed To Require Translation Of A Referendum Petition Into Spanish In Monterey County.

The sole legal issue in this case involves the application of § 203 of the Federal Voting Rights Act ("FVRA"). That statute states:

> Whenever any State or political subdivision subject to the prohibition of subsection (b) of this section provides any registration or voting notices, form, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable minority group as well as in the English language.

42 U.S.C. § 1973aa-1a(c).

Under the applicable federal regulations, the County is "subject to the prohibition of subsection (b)." 28 C.F.R. § 55, App. (2005) (identifying the County as being subject to the multilingual requirements of § 203, and in particular the Spanish heritage requirements). The obligations thereby imposed on counties such as Monterey are further expounded in the regulations as follows:

> The requirements of ... 203 (c) apply with regard to the provision of "any registration or voting notices, forms, instructions, assistance or other materials or information relating to the electoral process, including ballots." ... Accordingly, the quoted language should be broadly construed to apply to all stages of the electoral process, from voter registration through activities related to conducting elections, including the issuance, at any time during the year, of notifications, announcements, or other informational materials concerning the opportunity to register, the deadline for voter registration, the time, places and subject matters of elections, and the absentee voting process.

28 C.F.R. § 55.15. Pursuant to these provisions, voting materials should be conveyed in Spanish, in addition to English, so that all the electorate may participate effectively in the process.

Supreme Court precedent mandates that this Court broadly construe the FVRA. *See Allen v. State Bd. Of Elections*, 393 U.S. 544, 565-66 (1969) (stating that FVRA gives a broad interpretation to

the right to vote and recognizing that voting includes "all action necessary to make a vote effective"). In enacting the bilingual election requirements, Congress made an explicit finding that "language minorities had been effectively excluded from participation in the electoral process," necessitating remedial action "to enforce the guarantees of the 14th and 15th amendments." 42 U.S.C. § 1973aa-1a(a). This authority requires a broad view of the applicability of the FVRA to state elections. Applying the FVRA's bilingual mandates to referendum petitions will further Congress' goal of ensuring broad participation in the electoral process.

With respect to petitions such as recall or referendum, § 203 raises two basic questions: (i) whether the petition constitutes "registration or voting notices, form, instructions, assistance, or other materials or information relating to the electoral process, including ballots" under § 203 and (ii) whether the petition is of the type of material or information provided by the State or a political subdivision. *Padilla v. Lever,* 463 F.3d 1046, 1048. This brief will deal with both issues in depth. However, first it will discuss the effect of the *en banc* panel's decision on both issues.

### B.     The Effect Of The *En Banc* Panel's Decision In *Padilla v. Lever.*

As explained, there is a two part test to determine whether § 203 applies. While acknowledging a need to determine whether the recall petition constituted "registration or voting notices, form, instructions, assistance, or other materials or information relating to the electoral process, including ballots" if a violation is to be found, the *en banc* panel did not reach that issue. It decided only the question of whether materials were "provided" by the State or its subdivision, its negative decision on that issue obviating the need to deal with the other. *Id.* at p. 1050, footnote 3.

As to whether the materials were provided by the State or its subdivision, the panel concluded recall petitions were not. *Id.* Its primary reasoning as to why that was not the case is provided in the following two paragraphs:

> It is true that California regulates recall petitions in some detail. The petitions must follow a format provided by the Secretary of State, and must use a minimum type size. (Citation omitted.) The petition also must include a copy of the Notice of Intention, the statement of grounds for recall, and the answer of the targeted officer if the officer submitted one. (Citation omitted.) But these regulations do not mean that the petitions are *provided* by the State or subdivision. The form is regulated by the State, but the proponents fill out the petition, supply the grounds of recall, and have the petitions printed at their own expense. The fact that, under

[California law], the Secretary of State "provides" the format does not mean that the State "provides" the petitions themselves within the meaning of the Voting Rights Act.

The plaintiffs argue that, because the election officials are charged under state law with ascertaining whether "the proposed form and *wording* of the petition meets the requirements of this chapter[,] (citation omitted), they are dictating the content of the petitions to the degree that the petitions may be said to be "provided" by the County. But there is nothing in the chapter governing elections that specifies the actual wording that proponents must use, for example, in stating their grounds for recall. Nor does the record contain any hint that the elections officials determine the contents of the petition; they merely make sure that the petitions are in the form specified by statute. It is not reasonable to hold that this regulatory process transforms petitions privately initiated, drafted, and circulated by the proponents into petitions "provided" by the County for purposes of the Voting Rights Act. *Id.* at 1051 (emphasis in original).

As will be seen in the following section, the very reasons cited by the Court of Appeals to find recall petitions not to be subject to FVRA support its application to referendum petitions. To begin, referendum petitions are subject to the same rigid regulatory scheme which the *en banc* panel found of relevance, but not sufficient to say that the materials were provided by the government. However, referendum petitions, as opposed to recall petitions, meet that threshold because the bulk of the petition, the County ordinance or resolution, is provided by the County, whereas almost nothing of the materials is provided by the petition circulators.

**C.    The Referendum Petition And Associated Forms Are "Provided" By The State Or Its Subdivision.**

Referendum petitions are supplied by the State or its subdivision within the meaning of FVRA because the principal component of the petition, the local ordinance or resolution, is drafted by the subdivision, the County, and every other element of the petition process is either dictated by or closely regulated by law.

In California's referendum process, ordinances may be subject to a referendum petition within 30 days of the ordinance being adopted. Cal. Elec. Code §§ 9141, 9144. The petition must be duly signed by only 10% of the voters in the County in the last gubernatorial election.

*Id.*, § 9144. When presented to the Board, a vote must be taken as to whether to appeal the ordinance or not. *Id.* If not entirely repealed, the ordinance is then placed on the ballot for a majority vote.

1  Under the California electoral system the County provided the Petition so as to require its translation under FVRA. To begin, there is elaborate government involvement in all aspects of the process. The government plays an integral role in regulating, approving, monitoring, and, ultimately, in administering referendum elections. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 833 (9th Cir. 1986) ("That the state or a political subdivision has mandated by law that certain preliminary steps be taken by the would-be voter, the candidate for office, or the proponents of an issue does not in any sense absolve the governmental entity of its responsibility under the Voting Rights Act"). Indeed, this heightened level of control that extends to the beginning of every referendum process is enshrined in the numerous statutory requirements governing conduct, well before the point where petition signatures are certified. *See* Cal. Elec. Code §§ 9140 *et seq.*; *see also Id.* at § 9146 (the provisions of the elections code relating to the form[2] of petitions, the duties of county elections officials, and the manner of holding elections in *initiative* matters also govern the procedures in *referendum* matters).

That the government has an integral part is further evidenced by the large role it plays in ensuring that referendum petition conforms to statutory requirements. In addition to the above-referenced code sections specifying the form and content of the referendum petition, the Code imposes highly specific requirements as to the information required of petition signers. *Id.* at § 9020 (incorporated into the referendum petition process by sections 9101 and 9146). It imposes time limits on when the petition may be filed in order to halt effectiveness of the relevant ordinance. *Id.* at § 9141, 9144 (ordinances become effective 30 days after passage unless a referendum petition protesting its adoption becomes effective). The local elections officer, in this case the Registrar of Voters, is required by the Code to examine and verify the number of valid signatures on the petition, and is provided with detailed direction on how to do so. *Id.* at § 9113-9115. The political subdivision may have to reject the

---

[2] The state mandates the specific format that county referendum petition proponents are required to use. *See* Cal. Elec. Code § 9147(a) ("The heading of the proposed referendum shall be in substantially the following form: 'Referendum Against an Ordinance Provided by the Board of Supervisors'"). The Code also requires that a copy of the title and text of the ordinance being referended be attached to the petition. *Id.*, § 9147(b).

petition if it does not comply with the Code. *See, e.g. Myers v. Patterson*, 196 Cal.App.3d 130, 136 (1987) (regarding initiative petition).

From the 30,000 foot level, some of the same things were true of recall petitions, as the *en banc* panel in *Padilla* noted in concluding that recall petitions were not governed by FVRA. That court went on to say why FVRA did not apply:

> But **there is nothing in the chapter governing elections that specifies the actual wording that proponents must use**, for example, in stating their grounds for recall. Nor does the record contain any hint that the elections officials determine the contents of the petition; they merely make sure that the petitions are in the form specified by statute. *Padilla* at 1051 (emphasis added).

Therein lies the primary difference between recall and referenda petitions. In the latter, the government does determine the content of the petitions: it actually supplies the text that is before the signers of the petitions and ultimately the voters. The Resolution, which is the entire object of the Petition, was drafted and adopted by the County in the first place. Since the Resolution is the primary part of the Petition, the Petition too is functionally provided by the government. Further, consider that the effect of the Petition may be that upon reconsideration the Board eliminates the ordinance. If that happens, the law will have been changed by the 10% who signed the petition, not the 50% majority who voted one way or another on the ordinance itself. The petition signers then become the part of the electorate that is making decisions about the ordinance, not the actual voters.

Finally, when and if a referendum petition qualifies for the ballot, the Registrar is required to forward the measure to the County Counsel for preparation of an impartial analysis of the measure and its effect on existing law, and if necessary the county auditor may be required for a similar analysis of the fiscal effect of the ordinance. *Id.* at § 9160. No such role exists with respect to recall elections, where there is a person, not a law, involved.

In sum, the government provides the central item to the entire process—the Resolution itself. As to the remainder of the Petition, the statutes govern exactly what the Petition must say and it is up to the government to see that they comply. About the only acts involved in the referendum petition process that the state does not either perform or dictate are the copying and circulation of the petition; but, as noted above, even those activities the state carefully regulates. For example, if they are circulated

1  dishonestly, the government may have a role in correcting that problem. *See Billig v. Voges*, 223
2  Cal.App.3d 962 (1990)  It is difficult to imagine greater state involvement in an election-related process.

### D. Referendum Petitions, Forms And Associated Documents Constitute "Materials Or Information Relating To The Electoral Process."

*Padilla* provided no guidance with respect to the second criterion, whether the referendum petition constitutes any of "registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots...." FVRA § 203 (42 U.S.C. § 1973aa-1a(c)). But it is a simple task to observe that a referendum petition clearly meets this second test.

The plain meaning of a statute controls absent a clearly expressed legislative intention to the contrary. *See Lopez v. Monterey County*, 525 U.S. 266 (1999) (interpreting § 5 of FVRA by examining the "face of the Act itself"); *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999) (courts will look no further than the plain meaning of the statute unless application leads to unreasonable or impractical results); *see, also White v. E-Loan, Inc.*, 409 F.Supp.2d 1183, 1186 (N.D. Cal. 2006) ("It is only appropriate for this Court to consider legislative history arguments if the statutory text is ambiguous").

A "form" is a "printed or typed document with blank spaces for insertion of required or requested specific information." *See Merriam Webster's Collegiate Dictionary*, at 458 (10th ed. 1996). Referendum petition documents easily fit that description. *See, e.g.*, Cal. Elec. Code § 9147(a) ("The heading of a proposed referendum measure shall be in substantially the following *form*: 'Referendum Against an Ordinance Provided by the Board of Supervisors'") (emphasis added).

Additionally, the statutes require that referendum proponents attach a copy of the ordinance to be referended to the above-referenced form. *See Id.*, § 9147(b). There can be no serious dispute that the ordinance being referended constitutes "other materials or information relating to the electoral process." It is the very reason for the election.

The County anticipates all of RSJOC's arguments on this point hinge on its contention that circulation of the petition has nothing to do with the "election," for the simple reason that it occurs before the balloting. *RSJOC's MPA*, at 11-12. While that was arguably the view of other circuits in two cases upon which RSJOC may rely (*Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988); *Montero v.*

*Meyer*, 861 F.2d 603 (10th Cir. 1988)), other precedent and authority is contrary. The United States Attorney General rejects this view, explicitly finding that *petitions* are included. *See* 28 C.F.R. § 55.19 (a) (discussed below). Most important the Ninth Circuit has summarily rejected that argument: "[t]he Act does not exempt information or material, compelled by statute, which is preliminary to voting, but essential if an election is to occur." *Zaldivar v. City of Los Angeles, supra*, 780 F.2d at 833, n. 11 (reversing District Court's finding that plaintiffs' Voting Rights Act claim was frivolous under Rule 11). Nothing is more essential to an election referendum occurring than qualifying that referendum for the ballot in the first place. And that qualification cannot occur if the form prescribed by statute is not circulated, and the ordinance to be repealed is not attached. Axiomatically, the form and the ordinance constitute "information or materials related to an election."

RSJOC may argue that the only materials covered by § 203 are those documents that are provided to voters at the polling booth, namely ballots. Such an interpretation violates all rules of statutory construction: it would render the phrase "including ballots" superfluous; it would also render the phrase "other materials or information relating to the electoral process" both superfluous *and* redundant. Because of section 203's broad remedial scope, the statute must be construed to include materials other than simply the ballots themselves. If Congress had intended such an interpretation, it could have easily restricted the act's application to just balloting. Instead it chose the broader term "relating to the electoral process," which includes all precursor steps, and which clearly includes materials such as petitions that are circulated to the voters.

### E. The Legislative History Of Section 203 Supports These Conclusions.

The legislative history of the FVRA mandates a broad interpretation. For example, in its report on the bilingual amendment, the Senate specifically expressed concern that language minorities exerted little influence or control over the election or appointment of local officials due to language barriers. Sen. Rep. No. 94-295 (1975) (Req. Jud. Not., Ex. B, p. 14). It strains reason to suggest that persons who initiate or sign referendum petitions are not participating in the "electoral process" or are not exercising some "control over [an] election."

On this point, we anticipate RSJOC will argue that Congress has implicitly acquiesced in an interpretation of the act that considers the electoral process to be limited to the act of balloting, because

when it reauthorized the act in 2006 it allegedly acquiesced in the *Delgado v. Smith*, 86 F.2d 1489 (11th Cir. 1988) and *Montero v. Meyer*, 861 F.2d 603 (10th Cir. 1988), two decisions from other circuits that held that § 203 did not apply to initiative petitions under the entirely different statutory frameworks existing in Florida and Colorado, respectively.  Such acquiescence is supposedly based on the fact that Congress did not amend the act to overrule those decisions.

The argument is mistaken.  First, those cases involved the initiative process, not the referendum process.  Their precedential value is dubious here, let alone their use leading to an assumption that Congress meant to acquiesce in those interpretations and apply it to referendum petitions.  In any event, the legislative history of the 2006 Federal Voting Rights Act renewal gathered by the County shows that it supports the County' position, rather than the contrary as RSJOC argues.  Congress was aware before renewing FVRA that decisions such as *In re Monterey Initiative Matter* and the initial *Padilla* decision existed.  Req. for Jud. Not., Tab 3.  Indeed, there was even a proposal to amend FVRA to explicitly exclude initiative petitions.  *Id.* at Ex. C, pp. 23-24.  Despite that fact, Congress chose to renew FVRA without amendment.  Under well-recognized principles of statutory construction, this supports an argument that Congress was aware of and acquiesced in an interpretation of the Act that required translating petitions into other languages by lawyers.  *See Dougherty County Board of Education v. White*, 439 U.S. 32, 38 (1978).  Any argument by RSJOC's that the FVRA renewal supports their motion for summary disposition is mistaken.

### F.  Deference Should be Accorded to the United States Attorney General's Interpretation of Section 203.

The Attorney General's ("AG") reasonable interpretation of the statute must be accorded deference.  *See United States v. Sheffield Bd. Of Comm'rs*, 435 U.S. 110, 131-32 (1978) (recognizing that because of the AG's "key role" in the formulation of the FVRA the United States Supreme Court has "given great deference to his interpretations" of the statute). The Court might also note that Congress has revisited the act three times (in 1982, 1992 and 2006) since the AG's regulations were issued shortly after the act's passage in 1975,  and also acquiesced in the AG's interpretations of the act as applying to <u>petitions</u> of all kinds (see below).  Cf. *Pleasant Grove v. United States*, 479 U.S. 462, 468 (1987) (awareness of AG view on the scope of section 5 of the same act).

The AG's guidelines regarding section 203 provide in pertinent part as follows:

> (a) Types of materials. ... A jurisdiction required to provide minority language materials is only required to publish in the language of the applicable minority group materials distributed to or provided for the use of the electorate generally. Such materials, for example, ballots, sample ballots, informational materials, and *petitions*.

28 C.F.R. 55.19(a) (emphasis added). Not only does this explicitly cover *petitions*, but it provides that any material "distributed to or provided for the use of the electorate generally" is also covered. Any petition is by definition distributed to the *electorate* generally, because it can only be signed by registered voters of the jurisdiction. See Cal. Elec. Code § 9144. Note the *en banc* panel said it was not convinced this section applied to recall petitions, but did not discuss referendum petitions. In fact, the Justice Department has made clear it understands referendum petitions to fall under FVRA's purview (*see* 28 C.F.R. § 51.22.) There is thus no such ambiguity pertaining to referendum, as the *en banc* panel surmised with respect to recall.

Also, the regulations elsewhere evidence the AG's interpretation of section 203 as applying to materials and activities other than merely casting the ballot.

> The basic purpose of these requirements is to allow members of applicable language minority groups to be effectively informed of and participate effectively in *voting-connected* activities. Accordingly, the quoted language should be broadly construed to apply to *all stages of the electoral process*, from voter registration through activities related to conducted elections, including, for example the issuance, at any time during the year, of notifications, announcements, or other informational materials concerning the opportunity to register, the deadline for voter registration, the time, places and subject matters of elections, and the absentee voting process.

29 C.F.R. § 55.15 (emphasis added). This statement of purpose clearly does not, as RSJOC would argue, evince a desire to impose any temporally-based restrictions on the application of the act.

## IV.  CONCLUSION

The petition is almost completely provided by the government, and there is a virtual absence of any drafting by the proponents. If the matter were to be ultimately placed on the ballot, the materials for the ballot would undoubtedly be translated in the minority language, and more than half the voters would have to approve the measure. However, under the state law, the resulting change in the local law

can be accomplished by as few as 10% of the registered voters within the jurisdiction without ever reaching the casting of those ballots in a process that effectively excludes those to be assisted by the FVRA.  There being no facts in dispute, these defendants/respondents respectfully request that the Court enter summary judgment in their favor.

Dated: November 6, 2006         NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP


BY: _____/ S /_____
     STEPHEN N. ROBERTS